(June 22, 1920.)

JOHN T. MUIR et al., Respondents, v. WILLIAM ALLISON et al., Respondents; WEISER IRRIGATION DISTRICT, Appellant.

[191 Pac. 206.]

ADJUDICATION OF WATER RIGHTS—DUTY OF WATER—CONSERVATION—ROTATION—FINDINGS AND DECREE—RULE OF STARE DECISIS.

1. The appellate court will not disturb the findings of the lower court upon questions of allotment and date of priority of water rights where there is substantial evidence in the record to support them.

2. Where error is assigned on account of the allotment of water rights to a water company instead of to the individual users of water under the system of such company, the finding and

1. Priority of right to use of water of irrigation company, see note in Ann. Cas. 1913D, 625.

2. For authorities on the question of construction of irrigation contracts with consumers, see note in L. R. A, 1916F, 257.

decree of the lower court will not be disturbed in that particular, in the absence of complaint on the part of such users, or showing that appellant's rights are in any way prejudiced by such allotment.

3. In the adjudication of water rights, the extent of a user's permanent right cannot be limited by the character of the crops raised, unless it is shown that under existing conditions the soil is adapted to only one crop or to limited kinds of crops.

4. The lower court found that on account of the use of a larger amount of water during the high-water part of the irrigating season, the soil absorbs and retains sufficient water so that a smaller amount during the succeeding low-water period will afford an adequate supply, and accordingly raised the duty of water from ⅝ of an inch during the high-water period to ⅜ of an inch during the remainder of the season. *Held*, that the evidence does not support this finding to the extent of showing it to be applicable to all the lands for which water rights are being adjudicated in this case.

5. Rights to the use of the waters of the state should not be determined upon a given theory that may or may not prevail in a particular case, unless it clearly appears from the evidence that such theory actually does apply to the conditions under investigation.

6. A practice having grown up among irrigation communities to the effect that when a user of water had secured the right to divert a certain quantity of water, he was thereafter entitled to a continuous flow of that amount of water during the irrigating season, and such practice having been sanctioned and confirmed by the legislature and courts of the territory and state throughout a long period and up to the time when adjudication of the rights involved in this case was sought, the rule of *stare decisis* must be held to apply, and the practice of rotation in the use of water cannot be imposed by the decree of adjudication upon those entitled to the use of such water, without their consent.

7. *Held*, that there is sufficient evidence in the record to support the finding of the lower court establishing the duty of water at ⅝ of an inch per acre, continuous flow.

8. It having been shown that the appellant irrigation district has already diverted and applied to a beneficial use a quantity of

6. Doctrine of rotation in use of water for irrigation purposes, see note in **Ann. Cas.** 1914A, 322.

8. On right to divert water from stream for irrigation purposes, see note in 41 **L. R. A.** 741.

water sufficient to reclaim the balance of its irrigable lands, in addition to irrigating the lands already reclaimed, under the duty of ⅝ of an inch per acre fixed by the court, the district should be permitted to change the place of use of water in sufficient quantity to reclaim the balance of its irrigable lands, provided the change is made within a reasonable time to be fixed by the court.

APPEAL from the District Court of the Seventh Judicial District, for Washington County. Hon. Ed. L. Bryan, Judge.

Appeal from a judgment of the district court quieting title to the use of the waters of the Weiser River. *Reversed in part and cause remanded.*

Lot L. Feltham and James W. Galloway, for Appellant.

The finding of the court placing all users of water from the Weiser River on a common level, ignoring the priorities of the appropriations and granting to all users a common and equal right to the use of water for irrigation of crops regardless of the date of the several appropriations, was gross error. (Sec. 3, art. 15, Const.; sec. 3245, Rev. Codes; *Malad Valley Irr. Co. v. Campbell*, 2 Ida. 411, 18 Pac. 52; *Hillman v. Hardwick*, 3 Ida. 255, 28 Pac. 438; *Geertson v. Barrack*, 3 Ida. 344, 29 Pac. 42; *Kirk v. Bartholomew*, 3 Ida. 367, 29 Pac. 40; *Dunniway v. Lawson*, 6 Ida. 28, 51 Pac. 1032; *Moe v. Harger*, 10 Ida. 302, 77 Pac. 645; *Washington State Sugar Co. v. Goodrich*, 27 Ida. 26, 147 Pac. 1073; *Cottonwood Water & L. Co. v. St. Michael's Monastery,* 29 Ida. 761, 162 Pac. 242; *Joyce v. Rubin*, 23 Ida. 296, 130 Pac. 793.)

The findings and conclusions were not supported by the evidence, and the decree is not justified by the evidence and is against law. (Sec. 4407, Rev. Codes; *Carson v. Thews,* 2 Ida. 176, 9 Pac. 605; *First Nat. Bank of Lewiston v. Williams*, 2 Ida. 670, 23 Pac. 552; *Standley v. Flint*, 10 Ida. 629, 79 Pac. 815; *Stoneburner v. Stoneburner,* 11 Ida. 603, 83 Pac. 938.)

Hugh E. McElroy, Frank Harris, Hawley & Hawley and Frank D. Ryan, for Respondents.

The findings of the court as to the time of the water appropriations of the appellant and the amount of appellant's water appropriation are correct and sustained by the evidence and by the law. (2 Kinney on Irrigation and Water Rights, chap. 10, also p. 1561; *Conant v. Jones,* 3 Ida. 606, 32 Pac. 250; *Barnes v. Sabron,* 10 Nev. 217; *Browning v. Lewis,* 39 Or. 11, 64 Pac. 304; *Dougherty v. Haggin,* 61 Cal. 305; *McDonald v. Lannen,* 19 Mont. 78, 47 Pac. 648; *Bean v. Stoneman,* 104 Cal. 49, 37 Pac. 777, 38 Pac. 39.)

The court has the right to compel users of water to resort to a system of rotation. (*Stickney v. Hanrahan,* 7 Ida. 424, 63 Pac. 189; *State v. Twin Falls etc. Canal Co.,* 21 Ida. 410, at pp. 437–443, 121 Pac. 1039, L. R. A. 1916F, 236; *Helphery v. Perrault,* 12 Ida. 451, 86 Pac. 417.)

"The law has become well settled that beneficial use and the needs of the appropriator is the measure and limit of the appropriation." (*Rodgers v. Pitt,* 129 Fed. 932; 1 Wiel, p. 510; *Union Mill & Min. Co. v. Dangberg,* 81 Fed. 73.)

"It is the policy of the laws of this state, and it has been so declared from time to time by this court, to require the highest and greatest possible duty from the waters of the state in the interests of agriculture and beneficial purposes." (*Farmers' Co-operative Ditch Co. v. Riverside Irr. Dist.,* 16 Ida. 525, 535, 102 Pac. 481; *Abbott v. Reedy,* 9 Ida. 577, 581, 75 Pac. 764; *Van Camp v. Emery,* 13 Ida. 202, 208, 89 Pac. 752.)

The question of enforcing rotation is here squarely presented to the court as a question of conservation of an admittedly inadequate water supply. It may, perhaps, be admitted that the question involves a forward movement. There is nothing in the law or the procedure covering a long period in any way militating against the adoption of this method of conserving and extending the water supply.

**J. M. Thompson,** *Amicus Curiae.*

Where the question has been insistently presented, the courts have unanimously stated that rotation promotes economy in the use of water, and all the decisions, whenever the question has been before the court, declare emphatically that there must be no unnecessary waste. (*McCoy v. Huntley,* 60 Or. 372, Ann. Cas. 1914A, 320, 119 Pac. 481; *Hufford v. Dye,* 162 Cal. 147, 121 Pac. 400; *Hough v. Porter,* 51 Or. 318, 95 Pac. 732, 98 Pac. 1083, 102 Pac. 728.)

"The law has become well settled that beneficial use and needs of the appropriator, and not the capacity of the ditches or quantity first applied, is the measure and limit of the right of such appropriators." (Kinney, Irr., 30; Long, Irr., secs. 54, 55; Wiel, Water Rights, p. 263; *Seaweard v. Pacific Livestock Co.,* 49 Or. 157, 88 Pac. 963; *Gardner v. Wright,* 49 Or. 609, 91 Pac. 286; *Union Mill & Min. Co. v. Dangberg,* 81 Fed. 73, 119; *Anderson v. Bassman,* 140 Fed. 14; *Farmers' etc. Ditch Co. v. Riverside Irr. Dist.,* 16 Ida. 525, 102 Pac. 481; *McPhee v. Kelsey,* 44 Or. 193, 74 Pac. 401, 75 Pac. 713.)

"There is no question as to the power of the courts in all jurisdictions throughout the arid and semi-arid west, as the law now stands, in all cases properly brought before them, in which one of the issues is the amount of water necessary for any given purpose, to suppress all wasting of water, and even to go further and declare what shall constitute the economical use of the water, and to fix its proper duty by a decree awarding the use of a certain amount of water for that purpose. Not only have the courts the power, but it is their duty, to do this." (Kinney on Irrigation and Water Rights, sec. 916.)

COWEN, District Judge.—The judgment of the district court was entered on the ninth day of May, 1918, fixing the priorities from which the various rights should date and decreeing the amounts to which the various users of water from the Weiser River were entitled. From this judgment

the appellant, Weiser Irrigation District, has appealed, assigning some thirteen specifications of error.

The first specification of error refers to the ruling of the lower court upon the demurrer of the appellant to plaintiff's complaint. The ruling was probably correct, but as the appellant has waived the question involved, in its reply brief, no further attention will be paid to it.

The second specification of error refers to the allowance of 100 inches of water to appellant under date of priority of 1868, appellant claiming that it should have been allowed 500 inches as of that date. As bearing upon this question we are cited in the briefs to the deposition of one E. M. Barton and also to certain parts of the evidence. The evidence referred to appears to support the findings and judgment of the court and the deposition of Barton we are unable to find. It is not in the transcript at the pages cited and we were unable to find it among the exhibits or files in the case, nor is it referred to in any of the indexes of the clerk or reporter. The court is therefore under the necessity of refusing to consider this specification further than to say that it is satisfied, upon consideration of the whole case, that no substantial injury is suffered by appellant from the finding complained of, for the reason that the allowances to it of subsequent dates of priority are sufficiently early in point of time and are large enough in amount to insure to it the 500 inches whenever it may require the use of that amount of water.

The third specification of error refers to the refusal of the court to give the appellant its full water right of a date not later that August 29, 1883. The action of the district court was correct in this particular. The statutes in force at that time required the prospective user of water, after posting his notice of location of water right, to commence the construction of his diversion works within 60 days from the posting and recording of his notice and to prosecute the work to completion without interruption, unless hindered by the elements. The evidence does not disclose uninterrupted

prosecution of the work in the construction of appellant's canal.

The fifth, sixth, seventh, tenth, eleventh and twelfth specifications of error refer to the allotments and date of priority made by the court to the Middle Valley Irrigating Ditch Company, a corporation, but we do not think that the judgment should be reversed on account of any of these matters. The Middle Valley Irrigating Ditch Company claims the inception of its rights from a location notice made in 1879. The court below did not allow its contention in this respect, but did allow its right from a second location notice posted in 1883 by one J. H. Reavis. While the evidence is not harmonious upon the question as to whether this company prosecuted the construction of its canal system without interruption to completion, yet there is evidence in the record to support the finding and decree. And, under the well-known rule that the appellate court will not disturb the findings of the trial court when there is evidence in the record to support it, the decree should not be disturbed in this particular. It is also urged that the trial court erred in permitting oral testimony to the effect that the said J. H. Reavis posted the location notice of 1883 for himself and as trustee for a large number of other persons who were jointly interested with him in the construction of the canal, but this was not error.

The specifications of error in Nos. 5, 10, 11 and 12 referring to the rights awarded to the Middle Valley Irrigating Ditch Company are immaterial, and it is not necessary for this court to pass directly upon the question involved, because if the decree should be reversed on account of them, the result would be to require the lower court merely to divide the amounts of water awarded to the Middle Valley Irrigating Ditch Company and award such rights to the individual users under that system. This would merely devolve an unnecessary amount of work upon the trial court without any prospect of changing the relative rights of any of the users from the river. If the users under the Middle Valley system are content with their articles of incorpora-

tion and the chain of title now resting in the corporation and appellant's rights are not injuriously affected, we see no reason why this court should require the district court to segregate the various rights of the users under this system and to divide this appropriation up among the individuals interested in the common award.

In specifications of error Nos. 8 and 13, the appellant questions the award in the decree to the Muir Bros., Geo. F. Smith et al., and to the Sunnyside Ditch Company, claiming the evidence does not warrant any allowance of a right to any of the parties of a date of priority antedating any of the dates given to the appellant, and claiming also that a decree of the district court in Washington county had restrained these parties from interfering in any way with appellant's prior right to 3,400 inches of water.

The evidence sustains the awards to Muir Bros., and to Geo. F. Smith et al. In reference to the Sunnyside Ditch Company it is only necessary to call attention to the fact that the appellant has awarded to it some 4,000 inches of water of date long prior to any award made to the Sunnyside Ditch Company, so it is apparent that this decree in no way violates the injunction decree theretofore rendered in the Washington county district court.

The fourth and ninth specifications of error have been reserved in this discussion until the last, as they have afforded, in our opinion, the gravest questions involved in this appeal. They relate to the duty of water, and if the decree is permitted to stand in this respect, will affect the entire system of water law in this state, and produce such a violent and radical change that their mere consideration must cause grave apprehension and necessitate the utmost care in their determination.

It may be said the findings and decree are somewhat confusing, and we are not sure that we have comprehended their entire purpose and intent, but if we have done so, it appears that the judgment contemplates a resort to what has been called the rotation system in the distribution of the waters of the Weiser River under the theory of economy

in its use and the elimination of unnecessary waste. "A consummation devoutly to be wished." The judgment of the lower court, if unappealed, would affect only the users of the water from the Weiser River, but now, if this court gives its sanction to the rule, it becomes the authorized rule for the entire state.

The portions of the findings and decree involved in this question are as follows:

## FINDINGS.

### 8.

That the duty of water, the amounts required for the proper and successful irrigation of lands, which is hereafter allotted, is the equivalent of five-eighths (5/8) of a miner's inch to the acre, continuous flow, said water to be measured at the various headgates or diversion points, with an additional allowance for seepage and evaporation only where necessary, as hereinafter stated, on account of the length and character of particular canals and water distribution systems, provided, however, that the said duty of water may be increased to the equivalent of three-eighths (3/8) of a miner's inch per acre continuous flow measured as aforesaid, during the low-water period.

### 9.

That during the irrigation season of each year, to wit, during the last days of July, or the early part of August, the said Weiser River and all of its tributaries and branches fall to a minimum of less than five-eighths (5/8) of an inch per acre for all of the lands irrigated therefrom, and particularly described in the complaint and various answers and cross-complaints therein; that by the continuous use of five-eighths (5/8) of an inch per acre during the high-water period, a higher or increased duty of water may be obtained during the said low-water period of each year, and that during said low-water period three-eighths (3/8) of an inch per acre, delivered at the various diversion points, is sufficient water to irrigate said lands, both upon the main Weiser River, and those lands irrigated from the various

tributaries thereof; except where an additional allowance is hereinafter made during said low-water period for loss by seepage and evaporation in carrying said water through the main distributing canal of the Weiser Irrigation District; and I therefore find, with the exception, above stated, that three-eighths (⅜) of an inch of water, measured at the various diversion points, is sufficient water for the irrigation of said lands during the low-water period; provided, however, that the raising of said duty of water from five-eighths of an inch to three-eighths (⅜) of an inch, as hereinbefore stated, shall be changed by the commissioner or engineer or other officer whose duty it shall be to execute this decree, only in proportion to the fall of said Weiser River and its tributary streams until such time as the said Weiser River or its tributary streams shall only convey sufficient water to supply the allotments hereinafter made.

10.

That the canal of the Weiser Irrigation District is approximately seventeen (17) miles in length, and that the amount of loss by seepage and evaporation occasioned by conveying water through said canal to the various distributing laterals is at least twenty-five (25%) per cent of the amount diverted at the diversion works from the river; that there is approximately 7,200 acres of land, including town lots, in said Weiser Irrigation District now under cultivation and for the use of which water is hereinafter allotted to the said lands, and required for use thereon; and five-eighths (⅝) of an inch per acre, measured at the heads or diversion points from the main canal of the various distributing laterals, is necessary for the irrigation of said lands during the high-water period, and three-eighths (⅜) of an inch to the acre, measured at the heads of the distributing laterals, is necessary for the irrigation of said lands during the low-water period, and on account of the length of the said canal the said Weiser Irrigation District will at all times during the low-water period require a minimum allowance for loss by seepage and evaporation of at least one

thousand (1,000) inches at the diversion point, and fifteen hundred (1,500) inches during the high-water period.

13.

That the water hereinafter allotted is allotted for beneficial use only, and when not actually and necessarily used by the various parties to whom the same is allotted, the said waters shall not be diverted from the natural stream; but this finding shall not be construed to prevent a rotation system among users from any individual ditch, or rotation among different ditches from the same stream. And I further find that a higher duty may be obtained by a system of rotation, both as between ditches and when practiced by the individual user under any one given ditch or canal.

24–A.

That the term "high-water period" wherever used in these findings and the decree hereunder refers to all that period of time when the Weiser River discharges sufficient water to supply all the users thereunder with the allotments made under the findings and decree herein on the basis of five-eighths (5/8) of an inch to the acre and such additional amount as may be allotted and decreed to cover loss by seepage and evaporation, and the term "low-water period" as used in these findings and decree hereunder applies to that period when the said Weiser River discharges a less amount of water.

25.

I further find that by a system of rotation the duty of water may be increased during the low-water period to the extent that the equivalent to three-eighths (3/8) of an inch to the acre continuous flow will meet all necessary demands for irrigation on the said Weiser River and each and all of its tributaries involved in this action. That a system of rotation, by which water is used in larger heads and at less frequent intervals, avoids loss both by seepage and evaporation. And I further find that irrigation of all or any of the lands involved in this action by rotation will save in seepage and evaporation and insure thorough irrigation, and that a continuous flow in small heads results in unnecessary

waste of the water thus used. I further find that the crops, usually grown by the land owners under the various ditches to which allotments have been made, are diversified and consist of the various grains, vegetables, fruit, hay and pasture. That the grains are usually matured before the commencement of the low-water period. I further find that during the low-water period there is less loss from evaporation on account of shorter days and cooler nights than during the previous high-water period and that in the years of ordinary flow of the waters of the said Weiser River and its tributaries there is sufficient water flowing therein during the low-water period to meet the necessary demands for all parties to whom allotments have been made under this decree during the low-water period, whenever the same is diverted, conveyed to its place of use and applied to the land without waste.

## DECREE.

It is further ordered, adjudged and decreed that the foregoing allotments are made upon the basis of five-eighths (5⁄8) of an inch per acre or its equivalent in irrigation heads during the high-water period with the gradual increase of duty to three-eighths (3⁄8) of an inch per acre or its equivalent in irrigating heads during the low-water period, which said amounts are hereby declared and decreed to be the duty of water during the high and low water periods for the said Weiser River and its tributaries, and that said 3⁄8 of an inch per acre or its equivalent in irrigating heads is the maximum duty of water for said river and its tributaries, and whenever the commissioner or other officer charged with the execution of this decree finds the water in said Weiser River insufficient to supply the allotments as hereinbefore made on the basis of 5⁄8 of an inch per acre or its equivalent in irrigating heads, then and in that event the duty of water shall be gradually raised to 3⁄8 of an inch per acre or its equivalent in irrigating heads, and whenever the water in said stream or any of its tributaries shall prove insufficient to furnish each allotment aforesaid with the full amount of 3⁄8 of an inch per acre as

aforesaid, measured at the various diversion points, then and in that event the last appropriator in point of time shall be denied the use of said water, except, however, there has been allotted and is hereby decreed to the Weiser Irrigation District an additional quantity of water amounting to fifteen hundred (1,500) inches and not less than one thousand (1,000) inches during the low-water period for loss by seepage and evaporation between the diversion works of its canal and the head of the distributing laterals of its canal system.

It is further ordered, adjudged and decreed that each of the parties hereto to whom water is allotted by this decree be and they hereby are required to provide for the diversion of water from the said Weiser River and its tributaries in irrigation heads during the low-water period which said irrigation heads shall be the equivalent of ⅜ of an inch to the acre continuous flow, and it is hereby decreed and declared to be the duty of the water commissioner or other officer charged with the execution of this decree to make or cause to be made necessary rules and regulations for the distribution of said water in irrigation heads during the low-water period and to shut off said water from all ditches diverting the same whenever and wherever the parties thus diverting the water are not applying the same to a beneficial use or are permitting the same unnecessarily to waste, and to that end the said commissioner or other officer aforesaid shall rotate the water in the ditches diverting from the small streams tributary to said river whenever in his opinion the duty and efficiency of the water used may be materially increased thereby.

As used in this decree the high-water period shall include all that portion of the irrigating season when the river and its tributaries discharge sufficient water to supply all the allotments herein decreed on the basis of five-eighths (⅝) of an inch to the acre and the low-water period shall consist of all that portion of the irrigating season when the discharge of the river and its tributaries is insufficient to supply the last-named amount of water.

By finding 8 the duty of water is fixed at 5/8 of an inch per acre, with the proviso that this duty may be increased to 3/8 of an inch during the low-water period. By paragraph 9 it is found that the continuous use of 5/8 of an inch per acre during the high-water period will raise the duty from 5/8 to 3/8 during the low-water period, and the court finds that 3/8 is the duty during the low-water period, provided the change is made only as the river falls, and the water is insufficient, as we suppose, to supply the full 5/8 per acre.

The court further finds in No. 25, that the duty of water may be increased to 3/8 of an inch per acre by a system of rotation; that a portion of the crops in the district are matured before the low-water season, and there is less loss from evaporation during the low-water season by reason of shorter days and cooler nights.

The decree then allots the use of the water upon the basis of 5/8 of an inch during the high-water period and 3/8 during the low, directs the water commissioner to rotate the water from the small tributary streams *only,* and fixes the division line between high and low water periods as being the time when the water of the river is insufficient to supply all the users therefrom with the full 5/8 per acre.

There are four reasons given in the findings upon which the reduction in the allowance of water from 5/8 to 3/8 is based, to wit: The use of 5/8 of an inch to the acre during the high-water period adds so much water to the soil that thereafter 3/8 of an inch is sufficient to keep the supply up; the use of the rotation system; maturing the grain crop before the low-water period; and the shorter days and cooler nights during the low-water period. It is impossible to say just how much weight attached to each one of these conditions in the mind of the court in reaching this determination, but the last two may probably be dismissed as negligible, because in the case of the maturing of the grain crops it is only necessary to say that the users of water may change the character of crops grown at will from those that require much water to those that require little and *vice versa,*

and the extent of a user's permanent right may not be limited by the character of crops raised unless the soil is adapted only to one, or to limited kinds of crops. In reference to the shorter days and cooler nights resulting in less evaporation, we take it this condition is practically a negligible factor, in the court's estimate of this water duty. It would be impractical, if not impossible, to tell what the amount of such evaporation is, and other conditions may, and probably do, completely offset it. The hotter days and clearer weather that usually prevail, and the less precipitation that usually occurs during the months of July and August in our climate and the increased absorption of water from growing crops, should probably be considered in this connection. The effect of a condition of shorter days and cooler nights is too trivial, or at least too uncertain in the face of other pre-existing conditions, to have any weight in the determination of a case of this kind.

Another reason for lowering the amount of water as between the two periods is that by the use of a larger amount during the first period the soil absorbs and retains a sufficient quantity, so that a smaller amount thereafter will keep up an adequate supply. This conclusion appears to have been reached by the trial court from the testimony of those who were giving their testimony as a matter of fact as applied to a portion of the lands under investigation, and as theory to others, and with no evidence that the theory was true as applied to all of the lands. It is a well-known fact to those familiar with conditions prevailing in this state that this theory is true of some lands and that it is not true as to others, depending entirely upon the character of the soil, its depth, the kind of subsoil, the drainage and perhaps other conditions. Rights to the use of the waters of the state should not be determined upon a given theory that may or may not prevail in a particular case, unless it clearly appears from the evidence that it does and should apply to the conditions under investigation. The court is here dealing with property interests so vast, and with conditions so various, as to require actual demonstration of a condition of

this kind before basing any portion of its decree upon it. Our attention has not been directed to any evidence in this record that will justify this finding, so far as the lands under appellant's system are concerned. Whether conditions may arise in other cases which might justify the court in alloting an appropriator of water a certain amount for one portion of the irrigation season and a different amount for another part, or whether the law would permit such a decree, is not passed upon in this opinion, but is left open for future determination if occasion arises. The court merely determines that the evidence in this case does not justify such a changing of the allotment.

The remaining basis for this variable duty of water is the rotation system of distribution, and it would appear that this is the principal reason the amount of water was scaled down from $\frac{5}{8}$ of an inch to the acre in high-water season to $\frac{3}{8}$ in low. The court here has been presented with somewhat elaborate briefs and the citation of very respectable authority in favor of the adoption of this system as the prevailing rule in the state. Learned and eminent counsel have argued with force and much logic to the effect that the title to waters of our natural streams is in the state; that the use of this water is granted to its citizens and others upon conditions; that amongst the conditions are these: That the water must be put to some beneficial use; that they may take only so much as they can use economically to the end that the water supply—totally inadequate to the needs of the people of the state—may be made to perform the largest possible public service; that the user of water shall not waste that which everybody needs and, in a certain sense, is a part owner of, and that he shall not take that which cannot benefit him when it might benefit his neighbor.

They say also that experience has demonstrated, and the court finds as a fact in this case, that by rotating the water, especially when it has been decreed in small amounts, it may be made to subserve the wants of more people and irrigate a larger acreage of land. Therefore, they reason that it is the duty of the court in the interest of economy in the use

of water to declare the rule in this state compelling the use of water by rotation.

There is no use in denying the force of this reasoning, and were it a statement of all of the facts, rules and logic that we apprehend are applicable to the case, there would be no other conclusion to be reached in the matter, but we are not convinced that the time has yet arrived for the adoption of this rule in Idaho. There are other rules of law and other conditions to be considered, and a statement of some of them will be attempted.

The constitution has delegated to the legislature control of the waters of the state with the power to regulate by law its distribution. Prior to the constitution, and probably since, in the absence of express legislative regulation, the courts have been under the necessity of declaring laws or regulations relating to water and its use as founded in the practice, custom or implied understanding of the people using the water. These, of course, have been accepted by the people as the law and they have proceeded to acquire property based upon these laws, and secured, as they supposed by a reliance upon them. Among these rules was the one that when the user of water had procured to himself the right to divert a certain quantity, he was thereafter entitled to a continuous flow of that amount, and practically every decree quieting title to water that has been written in this state for fifty years, or more, has been based upon this rule of continuous flow. It has been the law since the creation of the territory, and property interests of tremendous value and affecting thousands of individuals have had their inception and development under it. Numerous statutes have also been passed by the legislature affecting the water law of the state in the light of this rule of distribution and without any manifest intention or purpose to change it. May the courts thus change this long and well-established rule of property right and set up in its place a new and different rule? We think not, for there are lacking all those elements justifying a declaration of law which existed at the time of the adoption of the original rule.

This conclusion is more easily arrived at when we consider the effects of such a sweeping change. By far the larger portion of the water rights existing in the state have passed to decree based upon the rule of continuous flow. These decreed rights would at once become unsettled and disturbed and new and expensive litigation encouraged.

We think the case to be one particularly suited to the application of the rule of *stare decisis,* and it is held that it does apply. But it may be added in passing that it is far from the purpose or intention of the court to close the door against the adoption of the rotation system in the state. Undoubtedly the courts would enforce contracts between parties involving the use of the rotation system as has already been done by this court in the case of the *State v. Twin Falls etc. Co.,* 21 Ida. 410, 121 Pac. 1039, L. R. A. 1916F, 236, and perhaps when property rights have grown up, or common practice and usage have made it a settled and fixed practice in a particular community, it might be the duty of the courts to enforce it. Experience seems to indicate that the use of the rotation system not only tends to conserve the already inadequate water supply, but also to contribute to larger and better crops, and to the retention of soil fertility.

But when and in what cases the rules for the distribution of water should be changed must be left entirely to future investigation and determination, and this opinion should not be understood as laying down rules for any prospective modification of the law.

The lower court, through the reports of the referee, found the duty of water to be ⅝ of an inch per acre continuous flow, and under the decisions its conclusions upon this question are binding upon this court if there is evidence in the record to support it, even though the evidence be not harmonious. The evidence supports the finding and we should not change it, and the rule that he who is prior in time is prior in right must be adhered to.

The judgment of the district court must be reversed so far as the duty of water is in question, but it is not the purpose of the court to order a new trial, if in the opinion

of the trial court a new judgment may be formulated in harmony with this opinion upon the evidence now before it.

But there is one other question that should be adverted to as involved in specifications 4 and 9: Appellant complains of the allotment of water made to it. It is found by the court that there are 8,000 acres of land under the Weiser irrigation canal capable of irrigation, and that 7,200 acres are in cultivation. The evidence shows without dispute that water under this system has been furnished at the rate of one inch per acre, and that its canal would carry at least 8,000 inches of water. It has thus diverted and been placing to a beneficial use a quantity of water sufficient to reclaim the balance of its irrigable land in addition to irrigating that already reclaimed under the duty of $\frac{5}{8}$ of an inch per acre as found by the court; and the district should be permitted to change the place of use of water heretofore used by it in sufficient quantity to reclaim the balance of its irrigable lands, provided the change is made within a reasonable time to be fixed by the court.

The judgment is reversed and the cause remanded to the district court for further proceedings in harmony with this opinion. Each party hereto shall bear its own costs on appeal except that the cost of the transcript shall be chargeable to the several litigants in proportion to the quantity of water finally decreed to each, to be ascertained and assessed by the trial court.

Morgan, C. J., and Budge, J., concur.