735 P.2d 995

Clayton BOOTH and Cheryl Booth, husband and wife, Plaintiffs, counter-defendants, respondents,

v.

WEISER IRRIGATION DISTRICT, Defendant, counterclaimant, appellant.

WEISER IRRIGATION DISTRICT, Third party plaintiff-appellant,

v.

Robert STOUT and Donna Stout, husband and wife; Billy Joe Youngblood and Carol Ann Youngblood, husband and wife; and Kenneth E. Youngblood and Frances C. Youngblood, husband and wife, Third party defendant-respondents.

No. 16545.

Supreme Court of Idaho.

March 23, 1987.

Bert L. Osborn, of Welch & Osborn, Payette, for defendant, counterclaimant, appellant.

Lary C. Walker, of Walker & Lindquist, Weiser, for plaintiffs, counter-defendants, respondents Booth.

Robert and Donna Stout, Billy Joe and Carol Ann Youngblood, and Kenneth E. and Frances C. Youngblood, pro se.

BAKES, Justice.

Appellant, Weiser Irrigation District (WID), appeals a district court decision holding that respondents Clayton and Cheryl Booth (Booth), and Robert and Donna Stout, Billy Jo and Carol Ann Youngblood, and Kenneth and Frances Youngblood (*pro se* respondents), are entitled to 250 inches of water each year pursuant to an 1890 contract between the parties' predecessors in interest.

The dispute began in 1977 when drought conditions made water scarce in the Weiser River Watershed. At that time WID demanded that Booth, who had been receiving water from the district for 87 years, shut off his water. However, no action was taken, and Booth continued to receive water from WID's canal. In 1981, Booth brought suit against WID seeking a judi-

cial declaration of a water right of 250 inches per year against WID pursuant to (1) an 1890 contractual agreement between Booth's predecessors in interest, Jeffreys and Durbin, and WID's predecessor in interest, the Weiser Water Company; and (2) a decree in the case of *Muir v. Allison*, 33 Idaho 146, 191 P. 206 (1920), which Booth claimed recognized the effects of the 1890 agreement. WID denied Booth's claims and by use of third party complaint brought the other *pro se* respondents into the case and requested that the district court issue an order dividing 100 inches of water between respondent Booth and the *pro se* respondents.

The issue before the district court was whether the "1890 Agreement" created a contractual water right/obligation between the respondents and the appellants. After trial and receiving written arguments from Booth and WID, the court found that the "1890 Agreement" obligated WID "to turn out ... 250 inches of water ... every irrigating season forever ... if conditions are complied with." These conditions required Booth's predecessors to deed their interest in the Jeffreys-Durbin ditch to WID and to pay a proportionate amount of the upkeep for the ditch each year. The trial court further found that the conditions of the "1890 Agreement" were met; that water has been delivered in accordance with the agreement without charge for over 90 years; and that respondent Booth is entitled to 50 inches of water, and the other *pro se* respondents are entitled to 200 inches of water. The court further found that all respondents are obligated to participate, *pro rata*, in the annual maintenance cost as set forth in the 1890 agreement. WID has brought this appeal challenging the findings of the district court. We affirm.

WID has challenged the district court's interpretation of the "1890 Agreement." On appeal this Court must view the evidence produced below most favorably in support of the party who prevailed below. *McBride v. Ford Motor Co.*, 105 Idaho 753, 673 P.2d 55 (1983); *Higginson v. Westergard*, 100 Idaho 687, 604 P.2d 51 (1979); *Furness v. Park*, 98 Idaho 617, 570 P.2d

854 (1977); *Brizendine v. Nampa Meridian Irr. Dist.*, 97 Idaho 580, 548 P.2d 80 (1976). The record demonstrates that Sara Jeffreys and Steven Durbin were early Idaho pioneers who settled the land which is now owned by respondent Booth and the other *pro se* respondents. Jeffreys and Durbin made the first diversion and appropriations of water from the Weiser River in 1867 through the Jeffreys-Durbin ditch. In 1884 Jeffreys and Durbin formally filed water claims to 5,000 inches of Weiser River water. In 1890 WID's predecessor in interest (the Weiser Water Corporation) contracted with Jeffreys and Durbin to acquire their respective appropriated water rights and their ditch and diversion point for an expanded canal system. The result of negotiations between the parties led to the formulation of the "1890 Agreement" which is the controlling document in this dispute.

The clear wording of the agreement, together with the deed from Jeffreys and Durbin to WID's predecessor, demonstrates that Jeffreys and Durbin transferred their ditch and their 1884 claim to 5,000 inches of Weiser River water to WID and in exchange WID promised to Jeffreys and Durbin that it would turn out 250 inches of water each and every year for the benefit of their property which is located north of the Weiser River outside the Weiser Irrigation District. The "1890 Agreement" unambiguously states that it binds the parties, their successors and assigns. After the agreement was executed by WID's predecessor, Jeffreys and Durbin executed and delivered deeds transferring their ditch and water rights to WID. From 1890 until the present, a period of 97 years, the respondents and their predecessors in interest used the water from WID's canal. The district court interpreted the "1890 Agreement" as a contract which transferred Jeffreys' and Durbin's diversion facilities and early appropriated water rights to WID, and in exchange gave Jeffreys and Durbin a contractual right to 250 inches of WID's water.

█ WID raises three arguments on appeal. First, WID argues that the agree-

ment was not a contract to supply water, but rather merely an agreement to transport water through its ditch system for Jeffreys and Durbin. However, a review of the agreement and the record on appeal clearly supports the trial court's interpretation of the 1890 agreement to be a contract to supply water to the respondents through the Galloway Canal. In exchange for Jeffreys and Durbin transferring their diversion ditch and their 1884 water claim, WID agreed to turn out 250 inches of water each and every year to Jeffreys and Durbin. Both parties performed under the contract, and WID has turned out 250 inches of water, as needed, each year to the respondents for 97 years. The trial court did not err in concluding that the agreement was a contract to supply water, rather than merely to transport water.

Second, WID argues that prior court decisions which adjudicated Weiser River water rights effectively settled the present dispute and that it was error for the district court to ignore these decisions. Regarding that claim the district court found, however, that:

> "Both the *Muir vs. Allison* [33 Idaho 146, 191 P. 206 (1920)] decree and the decree in *Weiser City Water Ditch & Irr. Co. vs. Weiser Irr. Dist.* [7th Dist. Ct., Wash. County, filed June 18, 1909] acknowledged the water rights of Jeffreys and Durbin, and the plaintiff and third-party defendants are the successors of Durbin and Jeffreys."

While apparently neither the respondents nor their predecessors in interest were parties to those two adjudications, the district court concluded by the above statement that those decrees were not inconsistent with respondents' contractual claims in this action. We agree. Since the execution of the 1890 agreement, the respondents' water use has been based on the contract. The district court did not err in concluding that respondents' contractual rights were not inconsistent with the prior decrees in *Muir v. Allison, supra,* and *Weiser City Water Ditch & Irr. Co. v. Weiser Irr. Dist., supra.*

Finally, WID argues that, as a quasi-municipal corporation, it holds its water rights in trust for the benefit of its patrons and was barred in 1890 by the doctrine of *ultra vires* from agreeing to provide 250 inches of water to people outside of its boundaries. We find this argument without merit. WID's argument is loosely based on *Jensen v. Boise-Kuna Irr. Dist.,* 75 Idaho 133, 269 P.2d 755 (1954), which held that while an irrigation district could furnish seepage and waste water to owners of land outside of an irrigation district, it could not do so if the water was needed for proper irrigation inside the district. The *Jensen* decision was based on the versions of I.C. §§ 43–304, –305, and –316 that were in effect in 1954.

The *Jensen* decision is not applicable for two reasons. First, the statutory direction that was the basis for the decision in the *Jensen* case was not in existence in 1890 when the "1890 Agreement" was formed. Legislation regarding irrigation districts was not promulgated in Idaho until 1903. Second, the factual scenario in *Jensen* varies considerably from the instant case, and the holding in that case more nearly supports the respondents' position rather than that of the appellant. In *Jensen,* suit was brought by a plaintiff who was located outside of the district and who had contracted with the district to purchase waste and seepage water from the district. When the district failed to supply the water, the plaintiff sued. The water district claimed the contract was *ultra vires,* but this Court rejected that claim because there was no showing that the water identified to the contract was needed by the district's patrons. In this case, WID contracted with parties located outside of its district in order to acquire their established diversion facilities, canal and water rights in order to better serve its patrons. The agreement to acquire Jeffreys' and Durbin's diversion facilities and water rights increased WID's ability to serve its patrons. The fact that the agreement required it to deliver 250 inches of water to the contracting parties for use outside the district did not, under these factual circumstances, make the agreement *ultra vires.*

In conclusion, the evidence clearly supports the district court's findings that WID acquired Jeffreys' and Durbin's water

rights and facilities, and as consideration WID was to supply Jeffreys and Durbin with 250 inches of water a year. The district court's interpretation of the contract is supported by the clear wording of the "1890 Agreement" and by the evidence produced below. Therefore, we affirm the trial court.

Respondents have requested an award of attorney fees on appeal under I.C. § 12–121. Attorney fees are awardable if an appeal does no more than simply invite an appellate court to second-guess the trial court on conflicting evidence, or if the law is well settled and appellants have made no substantial showing that the district court misapplied the law. *See Minich v. Gem State Developers, Inc.,* 99 Idaho 911, 591 P.2d 1078 (1979), and *Davis v. Gage,* 109 Idaho 1029, 712 P.2d 730 (Ct.App.1985). These requirements have been satisfied by the present appeal, and we hold that respondents are entitled to an award of reasonable attorney fees.

Judgment affirmed. Costs and attorney fees to respondents.

SHEPARD, C.J., and DONALDSON, BISTLINE and HUNTLEY, JJ., concur.