760 P.2d 19

**L. Jean SMITH, a single woman, Plaintiff/Appellant/Cross–Respondent,**

**v.**

**IDAHO STATE UNIVERSITY FEDERAL CREDIT UNION, Defendant/Respondent/Cross–Appellant.**

**No. 16526.**

Supreme Court of Idaho.

July 19, 1988.

Gus Carr Anderson, Pocatello, argued, for plaintiff/appellant/cross-respondent.

Dial, Looze and May, Pocatello, for defendant/respondent/cross-appellant. John K. Looze, argued.

BISTLINE, Justice.

Appellant L. Jean Smith married Alfred Smith on May 13, 1971. At that time Mrs. Smith had separate property consisting of at least $4000 worth of savings bonds in a safety deposit box in a bank in Pocatello. On June 7, 1971, Mrs. Smith opened a savings account with the respondent Idaho State University Credit Union (Credit Union) in the sum of $1000, which came from her safety deposit box. On the same day she and her husband executed a "joint share account agreement." Both signed the agreement; it applied to the savings account being then opened and also to an account of Mr. Smith which had been opened prior to the marriage. Thereafter, various deposits and withdrawals were made to and from the savings account. On November 7, 1974, the Smiths purchased a certificate of deposit from the Credit Union for $3,298.04. It was redeemed on January 25, 1975, with both Mr. and Mrs. Smith endorsing it. The Smiths used those proceeds to enter into a joint venture with a third party involving the purchase and sale of a house. Both Mr. and Mrs. Smith, as well as the third party, were listed as grantors on the deed to the house. In June 1975, the Smiths received a gross profit of $9300 as a result of the venture. The record does not disclose whether this money was deposited with the Credit Union.

While in the employ of Idaho State University as a janitor, Mrs. Smith was injured and was awarded compensation benefits which were used to purchase a $6350.97 certificate of deposit, the second, from the Credit Union. This certificate, renewed twice by Mr. Smith's endorsement, was to mature in January 1979. On November 5, 1977, the Smiths purchased a third certificate of deposit from the Credit Union for $3210. It was set to mature in November 1978. All three certificates of deposit listed L. Jean Smith or Alfred E. Smith as owner.

In January 1978, Mr. Smith obtained the first of what would be ten separate loans from the Credit Union. He was ostensibly in the business of buying and repairing used cars. Mr. Smith signed promissory notes which in part were secured by encumbrances of specifically described motor vehicles. All of the notes were secured by a provision in the note whereby he pledged all money deposited with the Credit Union as additional security. One note specifically described, as additional security, the $6350.97 certificate of deposit purchased in January 1976.

The Credit Union did not cause its encumbrances on the vehicles to be made of record on the titles thereto. The Credit

Union did not require that the vehicles be insured against loss or damage. Mrs. Smith did not know of Mr. Smith's transactions. She did not endorse or guarantee the loan agreements. Statements were sent to Mr. Smith's work address. Although the money was purportedly to be used in Mr. Smith's vehicle enterprise, he admitted that some of the proceeds were dissipated at gambling tables in Nevada. The Credit Union was aware of this.[1] In fact, loan officers at the Credit Union agreed with Mr. Smith not to inform Mrs. Smith about Mr. Smith's gambling and debts therefrom. Following a routine audit of the Credit Union, a federal credit union examiner classified the loans as substandard, and illegal in the sense that they violated federal credit union regulations.

Mr. Smith defaulted on the loans in September of 1978. He phoned Mrs. Smith from Nevada, asking her to send money to pay his additional gambling debts. Mrs. Smith refused this request and thereafter filed a complaint for divorce which was granted November 1, 1978. She went to the Credit Union with a request for withdrawal of the funds in her account. The Credit Union declined the request, but for reasons unexplained, did give her $100. She commenced this action on December 14, 1978. Her complaint alleged among other things that the money withheld by the Credit Union was her separate property, and therefore, the Credit Union had no right to apply it to debts incurred by her husband.

The Credit Union, although refusing to allow Mrs. Smith to withdraw the money in her savings account, continued to credit her account with interest on the money. The Credit Union did not send statements to Mrs. Smith informing her that this was being done, but did report to the Internal Revenue Service that an interest dividend of $808.08 was credited to her savings account. The IRS sought payment from Mrs. Smith for income taxes on the earned interest. On this development Mrs. Smith retained counsel to defend her against the IRS. The current manager of the Credit Union testified that in October of 1983, the Credit Union applied the funds in savings accounts and represented by the certificates toward payment on Mr. Smith's loan accounts; the Credit Union then no longer credited her with accruing interest.

Initially, the trial court granted summary judgment in favor of Mrs. Smith and against the Credit Union.[2] This judgment was reversed by the Idaho Court of Appeals and the matter was remanded for trial with instructions to determine the separate or community character of the worker's compensation award, and the validity of the pledges as security for the loans made by Credit Union. *Smith v. Idaho State University Credit Union*, 103 Idaho 245, 646 P.2d 1016 (Ct.App.1982).

Following the remand Mrs. Smith argued at trial that the statute of limitations precluded the set-offs taken by the Credit Union. She also urged that the Credit Union breached a fiduciary duty owed to her, and that statutes and regulations governing federal credit unions had been violated. The Credit Union counterclaimed, contend-

---

1. Mr. Smith cashed numerous checks at casinos in Nevada. The Credit Union granted him a "Rite on Line" account, which enables a debtor to activate a line of credit simply by executing a draft. Mr. Smith cashed the following "Rite on Line" checks in Nevada:

| CHECK NUMBER | AMOUNT |
|---|---|
| 4631 | $500 |
| 4632 | $500 |
| 4603 | $500 |
| 4630 | $500 |
| 4655 | $500 |
| 4658 | $500 |
| 4673 | $500 |
| 4670 | $500 |

| PAYEE | DATE |
|---|---|
| Sparks Nugget | April 1, 1978 |
| Sparks Nugget | April 1, 1978 |
| Ponderosa Hotel | April 2, 1978 |
| Ponderosa Hotel | April 2, 1978 |
| Sparks Nugget | July 3, 1978 |
| Sparks Nugget | July 5, 1978 |
| Ponderosa Hotel | Aug. 1, 1978 |
| Sparks Nugget | Aug. 6, 1978 |

2. Mr. Smith was joined as a third-party defendant. However, he was adjudged bankrupt on February 23, 1979, and as a result claims against him were dismissed with prejudice.

ing that because the loans were community debts, Mrs. Smith is liable for the outstanding balance.[3]

On May 15, 1986, the district court reached a decision embodied in its findings of fact and conclusions of law. Significantly, the trial court concluded that: The Credit Union properly set-off the pledged property toward the balance owing on the notes executed by Mr. Smith; the Credit Union breached no fiduciary duty; and, the Credit Union is not entitled to judgment against Mrs. Smith for any balance owing on the loans over and above the amounts set-off. Mrs. Smith appeals the trial court's decision in regard to the set-off and the Credit Union cross appeals the decision denying it any recovery on the balance due on the loans and attorney fees.

## I.

The first issue presented is whether the set-off is barred by the applicable statute of limitations. Idaho Code § 5–216 provides: "**Action on written contract.—** Within five years: An action upon any contract, obligation or liability founded upon an instrument in writing."

Mrs. Smith argues that the Credit Union's set-off is barred by the statute because the Credit Union did not apply her money to the loans until October of 1983, more than five years after Mr. Smith defaulted on the loans in September of 1978, at which time the right to do so accrued.

Statutes of limitations are limitations on a party's right to bring an action. *See* 51 Am.Jur.2d Limitations of Actions § 20. A statute of limitations does not apply (1) to defenses where no affirmative relief is sought, or (2) to self-help set-offs and pledges. *Kelson v. Ahlborn,* 87 Idaho 519, 393 P.2d 578 (1964); *Carlson v. Ozmun,* 44 Idaho 500, 258 P. 1078 (1927). *See* Annot., Claim barred by limitation as subject of set-off, counterclaim, recoupment, cross bill, or cross action, 1 A.L.R.2d 630 (1948). *Frank v. Davis,* 34 Idaho 678, 203 P. 287 (1921).

In *Hirning v. Webb,* 91 Idaho 229, 231, 419 P.2d 671, 673 (1966), this Court stated:

> In *Kelson v. Ahlborn,* 87 Idaho 519, 393 P.2d 578 [1964], this Court was presented with the issue of whether a defendant's cross demand, arising from the same transaction as the plaintiff's original claim, could be set off against the plaintiff's claim even though affirmative relief on the crossclaims was barred by the statute of limitations. This Court held that such cross demands, although barred as the basis for affirmative relief, could be set off against the plaintiff's claim.

This case involves the same situation as in *Kelson.* Here, Mrs. Smith brought an affirmative action seeking the return of the pledged accounts. Even if the credit union would have been barred by the statute of limitations from bringing an affirmative action on the notes and the pledge agreement because five years had passed, the debt could still be set off against the plaintiff's claim. Mrs. Smith has made only the legal argument of the statute of limitations; she has not urged, nor did the trial court make any findings, as to equitable considerations such as the doctrines of laches and estoppel *in pais.*

Secondly, the credit union's exercise of its "self-help" right of set-off contained in the pledge agreement did not require any court action to accomplish, and accordingly the statute of limitations is not implicated. *Hirning v. Webb, supra; Kelson v. Ahlborn, supra.*

> [F]unds deposited with the bank become its property, and its obligation becomes one to pay out an equal amount on demand. *Meyer v. Idaho First National Bank,* 96 Idaho 208, 525 P.2d 990 (1974). The bank also has a general lien on all property in its possession belonging to a customer for the balance due it from the customer in the due course of business. I.C. § 45–808.

*First Interstate Bank of Idaho v. Gill,* 108 Idaho 576, 577, 701 P.2d 196 (1985). The bank's right to apply the Smiths' community property savings accounts to the default-

---

**3.** As of March 12, 1986, the aggregate balance due on the unpaid loans was $66,755.26.

ed loans is without question and, in this case, the statute of limitations simply has no application to the credit union's set-off rights.

## II.

■ The remaining issue is that raised by the cross-appeal. The trial court found that the Credit Union was not entitled to a judgment against Mrs. Smith for the unpaid balance of the loans made to Mr. Smith. The appellate standard of review is well-established. Findings based on substantial and competent evidence will not be set aside. *Hawkins v. Hawkins*, 99 Idaho 785, 788–89, 589 P.2d 532, 536–37 (1978); I.R.C.P. 52(a). Moreover, "[o]n appeal this Court must view the evidence most favorably in support of the party who prevailed below." *Booth v. Weiser Irrigation District*, 112 Idaho 684, 685, 735 P.2d 995, 996 (1987). Our review of the record convinces us that the evidence supports the finding of the district judge.[4] Under the circumstances of this case, enforcement of the notes against Mrs. Smith would be unconscionable.

■ Generally, a court will not permit a party to avoid his, her, or its contractual obligations. "The courts possess no roving commission to rewrite contracts. Equity will not intervene to change the terms of a contract unless it produces unconscionable harm, is unlawful or violates public policy." *Quintana v. Anthony*, 109 Idaho 977, 981, 712 P.2d 678, 682 (Ct.App.1985). However:

> ... equity may take jurisdiction on the ground of unconscionable conduct provided the conduct is serious enough to justify the court's interference. While a court of equity will not relieve a party from a bargain merely because of hardship, yet he [or she] may claim the interposition of the court if an unconscionable advantage has been taken of his [or her] necessity or weakness.

28 Am.Jur.2d *Equity* § 24 (1966) (footnotes omitted). Professor Dobbs believes that the unconscionability doctrine finds accept-

ance because the remedy is a limited one, mainly a defense:

> When unconscionability is established, a contracting party loses his 'expectancy', that is, any gains he might have made from the transaction. But he is not mulcted for damages. Because the remedy is relatively mild, it is reasonable to expect that unconscionability can be established by acts, or by contract terms, *that fall far short of fraud or other serious misconduct.*

D. Dobbs, *Remedies*, § 107 at 707 (1973) (emphasis added). In *Hershey v. Simpson*, 111 Idaho 491, 725 P.2d 196 (Ct.App.1986), the Court of Appeals recognized the dichotomy between procedural and substantive unconscionability. Procedural unconscionability relates to the bargaining process leading to an agreement such as a note. 111 Idaho at 493–494, 725 P.2d at 199–200. "It is characterized by great disparity in the bargaining positions of the parties, by extreme need of one party to reach some agreement (however unfavorable), or by threats short of duress." 111 Idaho at 494, 725 P.2d at 200 (parenthesis in original).

Substantive unconscionability, by contrast:

> ... represents a narrow exception to the general principle that full force and effect must be given to a valid contract even though its provisions appear unwise or its enforcement may seem harsh.... The elements of one-sidedness, *oppression* and *unfair surprise* are commonly cited in analysis of unconscionability.

Id. (citing *Graham v. Scissor–Tail, Inc.*, 28 Cal.3d 807, 171 Cal.Rptr. 604, 623 P.2d 165 (1981), oppressiveness; *Brooks v. Tertel-ing*, 107 Idaho 262, 688 P.2d 1167 (1984), surprise and one-sidedness (emphasis added)).

Enforcement of the notes would be unconscionable because the acts of collusion between the Credit Union and Mr. Smith prevented Mrs. Smith from learning that the deposited funds were being pledged for

---

**4.** The trial judge did not specifically articulate the legal reasoning behind his decision. However, the absence of finding and conclusions may be disregarded by the appellate court

where the record is clear, and yields an obvious answer to the relevant questions. *Pope v. Intermountain Gas*, 103 Idaho 217, 225, 646 P.2d 988, 1006 (1982).

Mr. Smith's used car business and gambling escapades. It is unrefuted in the record that Mrs. Smith knew nothing of the notes executed by Mr. Smith to the Credit Union.[5] Statements concerning the loans were sent to a mailbox at Idaho State University where Mr. Smith worked, not the marital home. Furthermore, loan officers at the Credit Union knew that Mr. Smith was going to Nevada to gamble—and they promised not to inform Mrs. Smith of this fact.[6]

Thus, the collusion between the Credit Union and Mr. Smith prevented Mrs. Smith of learning that her money entrusted to the Credit Union had been pledged as collateral. Simply put, she was prevented from learning of the loans because of the Credit Union's agreement to reveal nothing to her.

Idaho precedent suggests that where one spouse acts in collusion with third parties to deprive the other spouse of community property, the court will not countenance the collusive action. *Gustin v. Byam*, 41 Idaho 538, 240 P. 600 (1925) (collusion between husband, owner of hardware store and sheriff alleged, but not sufficiently proven); *Pittock v. Pittock [Pittock v. Buck]* 15 Idaho 47, 96 P. 212 (1908) (collusion between husband and bogus creditor alleged, but not proven). In this case, in contrast to *Gustin* and *Pittock*, the collusion is clear. Sher Wismar, formerly Sher Sloan, was a loan officer at the Credit Union when Mr. Smith obtained the ten loans. Called as a witness by the Credit Union at trial, she did not—nor did any other witness—contradict the evidence which established Mr. Smith's gambling losses and the loan officers' promise to withhold such from Mrs. Smith. The Court must accept as true the positive, uncontradicted testimony of a credible witness, unless his or her testimony is inherently improbable, or is rendered so by facts and circumstances disclosed at trial. *Pierstorff v. Gray's Auto Shop*, 58 Idaho 438, 447, 74 P.2d 171, 175 (1937). *See also Dinneen v. Finch*, 100 Idaho 620, 627, 603 P.2d 575, 582 (1979).

Our decision today does not depart from community property principles which allow one spouse to commit community funds. Rather, we apply the doctrine of unconscionability narrowly to the precise facts before us. Idaho Code § 32-912 (Supp.1981) provides that either the husband or wife can bind the community property by contract. Moreover, separate property of one spouse is liable for community debts incurred by that spouse. *Williams v. Paxton*, 98 Idaho 155, 559 P.2d 1123 (1977). While contracts normally will not be set aside merely because one spouse lacks the knowledge that community assets have been encumbered, a contract ought not be enforced against an unsuspecting spouse where the creditor (1) collusively prevents the unsuspecting spouse from learning that his or her spouse is pledging community property and dissipating the proceeds received therefrom, and (2) that the party in collusion (here the Credit Union) has extended loans way beyond the security, and entirely without the bounds of reason and good judgment.

To enforce a contract against the unsuspecting spouse in such circumstances would be unconscionable. The fact that immediately upon learning of Mr. Smith's gambling, Mrs. Smith went to the Credit Union is persuasive as to what action she would have taken if earlier appraised of the true circumstances. The agreement between the loan officers and Mr. Smith to keep secret the vast amount of unsecured loans being routinely handed out to Mr. Smith robbed Mrs. Smith of the ability to protect herself. In *Hershey, supra*, the Court of Appeals noted that one of the

---

5. Q: Did you know whether or not [Mr. Smith] was borrowing money from the ISU Credit Union?
   A: [Mrs. Smith]: Absolutely not. Tr., at 24.

6. Q. Did you ever tell anyone not to tell your wife?
   MR. LOOZE: Your Honor, I object.

[MR. SMITH]: Yes. I told the two girls in the credit union.
   Q. BY MR. ANDERSON: With the credit union?
   [MR. SMITH]: Yes, and they said they wouldn't say a word. Tr., at 137.

commonly cited elements in an unconscionability analysis is unfair surprise. 111 Idaho at 495, 725 P.2d at 200. That the element is present here is abundantly clear from the observations of the examiner. His job required that he investigate. Mrs. Smith, on the other hand, was purposefully deceived by the withholding of information by the very depository to whom she entrusted her savings.

The district court's decision that the Credit Union properly set-off the money in Mrs. Smith's account is affirmed. The district court's decision that Mrs. Smith is not liable on the balance of the loans is supported by substantial and competent evidence and is therefore also affirmed. No costs nor attorney fees awarded.

SHEPARD, C.J., and HUNTLEY, J., concur.

DONALDSON, J., sat, but did not participate due to his untimely death.

BAKES, Justice, concurring in part and dissenting in part:

I concur in Part I of the Court's opinion. I might also have concurred in Part II if the issue of unconscionability had been raised in the trial court, and that court had made the factual findings regarding unconscionability. However, the appellant did not raise the unconscionability issue either in the trial court or in this Court on appeal. Accordingly, the first time the parties will realize that they have had the issue of unconscionability litigated will be when they receive the Court's opinion today.

The trial court's opinion made findings which are adverse to this Court's finding of unconscionability. The trial court found that the defendant credit union "was not guilty of fraud or breach of fiduciary duty to plaintiff" (R., p. 140), as the majority opinion acknowledges, *ante* at 683, 760 P.2d 22. That finding of lack of fraud or breach of fiduciary duty is totally inconsistent with the majority's appellate factfinding of unconscionability.

The trial court did rule against the credit union on its claim for the remainder of its unsecured notes. However, in that conclusion of law the trial court gave absolutely no reason why the credit union was not entitled to a judgment against Mrs. Smith on the balance of its loans. The trial court merely stated that the "defendant is not entitled to judgment against plaintiff or any balance owing on the loans over and above the amounts set off." (Conclusion of Law Number IX.) No reason was given anywhere in the trial court's findings or conclusions for the denial of the credit union's claim for the balance owing on those community debts.

This Court on appeal now affirms that denial by the trial court, creating its own finding of fact and conclusion of law that the credit union was guilty of unconscionable conduct and therefore it is not entitled to recover on the remaining loans. That finding and conclusion is based solely upon this Court's embracing of Mr. Smith's testimony to the effect that he told two girls at the credit union that he was gambling with the money and he didn't want Mrs. Smith to know, and "they said they wouldn't say a word." *Ante* at 685, 760 P.2d 24. The majority opinion then states that this "Court must accept as true the positive, uncontradicted testimony of a credible witness, unless his or her testimony is inherently improbable, or rendered so by facts and circumstances disclosed at trial," *citing Pierstorff v. Gray's Auto Shop*, 58 Idaho 438, 447, 74 P.2d 171, 180 (1937). The majority of this Court then concludes, based on Mr. Smith's testimony, that "enforcement of the notes would be unconscionable because the acts of collusion between the Credit Union and Mr. Smith prevented Mrs. Smith from learning that the deposited funds were being pledged for Mr. Smith's used car business and gambling escapades." *Ante* at 684, 760 P.2d 23. However, Mr. Smith was hardly a credible witness. The trial court, who observed all of the witnesses and commented on their credibility, concluding (1) that the credit union was not guilty of fraud or breach of fiduciary duty to Mrs. Smith, and (2) that "the chief culprit, however, in the Court's opinion, is Alfred E. Smith. While Smith professes to be functionally illiterate, he

proved to be an avaricious, scheming, shrewd faker and a fraud. It is indeed unfortunate that plaintiff became the victim of this devious person's machinations." It is the testimony of this "avaricious, scheming, shrewd faker and ... fraud" which this Court now says that it is bound to accept under the *Pierstorff* case, thus justifying its factual foray into the unconscionability issue, an issue which was never raised either in the trial court or on appeal. However, the *Pierstorff* case does not require this Court, or any other court, to accept the testimony of an "avaricious, scheming, shrewd faker and [a] fraud." In any event, this Court should not be second-guessing the trial courts on the credibility of witnesses.

Additionally, our prior cases uniformly state that issues not raised in the trial court will not be considered or reviewed. *Baldner v. Bennett's, Inc.*, 103 Idaho 458, 460, 649 P.2d 1214, 1216 (1982) (holding that "issues not raised below ... will not be considered or reviewed"); *Green v. Young*, 102 Idaho 735, 639 P.2d 433 (1981); *Silver Syndicate, Inc. v. Sunshine Mining Co.*, 101 Idaho 226, 611 P.2d 1011 (1979); *McNeil v. Gisler*, 100 Idaho 693, 696, 604 P.2d 707, 710 (1979) (holding that "this Court has quite consistently adhered to the principle that an issue not raised below will not be considered when raised for the first time on appeal"); *Unigard Ins. Group v. Royal Globe Ins. Co.*, 100 Idaho 123, 127, 594 P.2d 633, 637 (1979); *Sines v. Blaser*, 100 Idaho 50, 52, 592 P.2d 1367, 1369 (1979); *Mitchell v. Siqueiros*, 99 Idaho 396, 582 P.2d 1074 (1978); *Farmer v. International Harvester Co.*, 97 Idaho 742, 553 P.2d 1306 (1976); *Bair v. Barron*, 97 Idaho 26, 539 P.2d 578 (1975); *Dunn v. Baugh*, 95 Idaho 236, 506 P.2d 463 (1973); *Frasier v. Carter*, 92 Idaho 79, 437 P.2d 32 (1968).

The trial court never ruled on the unconscionability issue because it wasn't raised in the trial court. The majority errs when it considers that issue on appeal. In any event, by finding that the credit union committed no fraud or breach of fiduciary relationship to the plaintiff, the trial court effectively nullified any basis for the majority finding unconscionability.

The issue of unconscionability was not only not raised in the trial court it was not raised by the appellant on appeal either. It is raised for the first time in the majority's opinion, contrary to Idaho Appellate Rule 35(a)(4), and the teaching of a number of our recent cases. *State v. Hoisington*, 104 Idaho 153, 159, 657 P.2d 17, 23 (1983) (citing *Bolen v. Baker*, 69 Idaho 93, 99, 203 P.2d 376, 379 (1949), for the proposition that "this Court has consistently followed the rule that it will not review the actions of a district court which have not been specifically assigned as error[,] [e]specially where there are no authorities cited nor argument contained in the briefs upon the question."); *State v. Dennard*, 102 Idaho 824, 825 n. 2, 642 P.2d 61, 62 n. 2 (1982); *see also Walker v. Shoshone County*, 112 Idaho 991, 998, 739 P.2d 290, 297 (1987) (Bistline, J., specially concurring) (stating that "hopefully, after today there will never be another opinion which sustains another erroneous trial court decision while ruling on another correct theory of law *unless* that correct theory was, as here, indeed presented to and urged upon the trial court." (Emphasis in original)).

The Court today seems willing to brush aside all our rules and precedents in order to achieve its "unconscionability" result. However, if unconscionability is now going to be an issue in this case, the defendant is entitled to a trial on that issue before a trial court, not a trial in this Court on appeal based solely on a selected portion of the testimony of one witness, Mr. Smith, which the trial court refused to believe, characterizing him as an "avaricious, scheming, shrewd faker and a fraud." I dissent from Part II of the Court's opinion.