108 P.3d 332

**Shannon R. BAKKER, an unmarried individual, Plaintiff–Appellant,**

v.

**THUNDER SPRING–WAREHAM, LLC, an Idaho limited liability company and Does 1–10 inclusive, Defendants–Respondents.**

No. 30383.

Supreme Court of Idaho, Boise, December 2004 Term.

Feb. 17, 2005.

Benjamin W. Worst, PC, Ketchum, for appellant. Benjamin W. Worst argued.

Lawson & Laski, PLLC, Ketchum, for respondents. James R. Laski argued.

KIDWELL, Justice Pro Tem.

This is a dispute concerning the payment to an individual of a commission for marketing condominiums. On a motion for summary judgment, the district court found in favor of the employer, Thunder Spring, holding that the employee had to be employed at close of escrow for the commission to be payable. We affirm.

## I.

### FACTS AND PROCEDURAL BACKGROUND

Shannon R. Bakker (Bakker) was employed by Thunder Spring–Wareham, LLC (Thunder Spring), as an on-site sales agent, marketing units at a private resort in Sun Valley. A written contract established the terms of the employment. Regarding compensation, the contract provided:

> Your compensation will be $3500 per month paid semi-monthly at $1750 per period. *You will also be paid .25% of 1% override on all successful closings of escrow on units at Thunder Spring.* This begins as of your first day of employment estimated to be on or about December 30, 2001. This includes all transactions written inside or outside the sales venue, and will be in effect until all units at Thunder Spring close escrow. This will not be applicable for units previously disclosed by the developer or those in a holdover period with McCann Daech Fenton. Further, *this is in affect (sic) only during your term of employment* with ... Thunder Spring.

(Emphasis added.)

Bakker met with a customer in early 2002. The customer was not satisfied with the available units, so Bakker showed him a model unit that was currently in escrow. The customer liked the model unit. Bakker negotiated a release of the contract on the model unit and her customer entered into a purchase and sale agreement for the model unit on March 23, 2002. Closing was scheduled for April 15, 2002.

The facts surrounding Bakker's termination are in dispute, but the parties have stipulated that Bakker's employment terminated on April 6, 2002. Bakker alleges she found a printed e-mail dated April 5, 2002, that evidenced an intent on the part of Thunder Spring to terminate her employment immediately. Bakker confronted a supervisor with the e-mail. The supervisor produced a letter indicating that her employment would be terminated April 10, 2002. The next day, the supervisor produced two memoranda, dated February 28, 2002, and March 29, 2002, that appeared to be negative performance evaluations. Bakker then terminated her employment immediately.

Thunder Spring asserts that the e-mail was not a termination of Bakker's employment, but notice that Thunder Spring had a concern and wished to discuss it with the director of sales. Thunder Spring asserts that the letter purporting to terminate Bakker's employment on April 10, 2002, was actually only notice that the contract between the marketing company and Thunder Spring was set to terminate on that date. Thunder Spring asserts that the performance evaluations were personally delivered to Bakker and discussed in a private meeting.

The employment terminated on April 6, 2002, at Bakker's insistence. Escrow on the model unit closed on April 15, 2002, with a purchase price of $2,500,000.00. Bakker believed she earned a commission of $6,250.00 for her work, and made a demand for payment pursuant to I.C. § 45–606. Thunder Spring refused to pay the commission. Bakker sued alleging a contractual and statutory claim to her wages, and a claim for

quantum meruit. On cross motions for summary judgment, the district court concluded that the contract was unambiguous and required that Bakker be employed at close of escrow in order to be paid the commission. The district court also concluded: 1) the quantum meruit claim failed because of the existence of the express employment contract; and 2) the complaint did not encompass a claim for breach of the covenant of good faith and fair dealing.

## II.

## STANDARD OF REVIEW

 Summary judgment is proper when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In a motion for summary judgment, this Court should liberally construe all facts in favor of the nonmoving party and draw all reasonable inferences from the facts in favor of the nonmoving party. Summary judgment must be denied if reasonable persons could reach differing conclusions or draw conflicting inferences from the evidence presented.

*Iron Eagle Dev., L.L.C. v. Quality Design Sys., Inc.,* 138 Idaho 487, 491, 65 P.3d 509, 513 (2003) (internal citations omitted); *see also Willie v. Bd. of Trustees,* 138 Idaho 131, 133, 59 P.3d 302, 304 (2002).

## III.

## ANALYSIS

**A. A Condition Requiring Employment On The Date Of Close of Escrow For A Commission To Become Payable Does Not Violate The Public Policy Of Idaho.**

 Whether a contract violates public policy is a question of law for the court to determine from all the facts and circumstances of each case. *Quiring v. Quiring,* 130 Idaho 560, 566, 944 P.2d 695, 701 (1997) (citing *Stearns v. Williams,* 72 Idaho 276, 283, 240 P.2d 833, 840 (1952)). Public policy may be found and set forth in the statutes,

judicial decisions or the constitution. *Quiring,* 130 Idaho at 566, 944 P.2d at 701. The district court did not rule on whether or not the term of compensation at issue violates public policy. Because public policy implicates a question of law and this case is postured as a summary judgment motion, this Court may rule on the issue even where the district court did not.

Idaho Code § 45–601 *et seq.* (Wage Claim Act) governs an employee's claim to wages against the former employer. The statutes do not contain any clear statement of public policy. For a declaration of public policy, Bakker cites *Goff v. H.J.H. Co.,* 95 Idaho 837, 521 P.2d 661 (1974). However, in that case, the issue was the treble damages award allowed by I.C. § 45–615:

> [L]egislative intent and public policy support this requirement that treble damages be allowed where unpaid wages are due and owing. The legislature has logically distinguished between injuries to an interest in real property and withheld wages, making the awarding of treble damages discretionary in one case and mandatory in another. The average wage earner depends greatly on the regular receipt of earned wages. If unpaid, serious economic injury may result to the wage earner. The legislature also has recognized that the wage earner would not fully compensated if he were allowed merely to recover his withheld wages because of the costs of attorney's fees and suit. Although attorney's fees are authorized by statute, they can not be awarded unless the wage earner recovers all that he claims. Therefore, in many cases there is a need for additional compensation. Thus, although the award of treble damages does tend to penalize the employer, it also serves to fully compensate the wage earning employee for the injury caused him by the delay he experiences in recovering his withheld wages in a court of law and the expenses connected with the recovery.

*Goff,* 95 Idaho at 839–40, 521 P.2d at 663–64. This is not a statement of public policy dictating an interpretation of the Wage Claim Act in its entirety. Any public policy stated in *Goff* is directed at the problem of an

employer withholding payment of wages post-employment, and the problem of collecting withheld wages. Nothing in *Goff* is easily read as dictating public policy regarding how employers and employees may negotiate the terms of compensation for the employment.

In addressing a previous version of the Wage Claim Act, this Court stated: "The statute we are considering is designed for the protection of laborers and mechanics and to prevent the necessity of their being delayed in the collection of wages due upon ceasing their employment and the consequent loss of time while awaiting settlement for services rendered." *Marrs v. Oregon Short Line R.R. Co.*, 33 Idaho 785, 789–90, 198 P. 468, 470 (1921). This statement also does not dictate a clear public policy that employers and employees cannot contract for the terms of compensation regarding when wages are earned and/or due, as long as relevant law is respected.

Under federal and state law, an employee must be paid a minimum of $5.15 for all hours worked. 29 U.S.C. § 206(a)(1); I.C. § 44–1502. As expressed in Idaho law, an employee might find himself paid on a time, task, piece or commission basis. I.C. § 45–601(7) ("Wages" means compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece or commission basis.). Under I.C. § 45–608, an employer is required to adhere to a schedule paying its employees at least once a month. In conjunction, these laws require an employer only to pay a minimum wage for all hours worked and to pay employees at least monthly. Beyond that, the Wage Claim Act does not place any limitations on the ability of the employer and employee to contract for the terms of the employee's compensation.

The original rule governing the earning of commissions was that a broker earned a commission when he procured a buyer "ready, willing and able" to purchase property according to the seller's terms. *Margaret H. Wayne Trust v. Lipsky*, 123 Idaho 253, 259, 846 P.2d 904, 910 (1993) (citing *Rogers v. Hendrix*, 92 Idaho 141, 438 P.2d 653 (1968)). However, in *Trust v. Lipsky*, this Court mod-ified that rule to require the purchaser to close the transaction according to the contract, noting that a growing number of courts had adopted the rationale of *Ellsworth Dobbs, Inc. v. Johnson*, 50 N.J. 528, 236 A.2d 843 (1967). *Id.*, 123 Idaho at 260, 846 P.2d at 911. This Court's express language was: "We also adopt the three-part test set out in *Ellsworth Dobbs* as the general rule to determine when a real estate broker earns his commission." *Id.* The existence of a "general rule" contemplates exceptions to the general rule; otherwise it would be "the" rule. We conclude that exceptions to this general rule will be found in the terms of the employment negotiated between the employer and employee. As long as the employer is meeting the minimum wage requirements of state law, further compensation is subject to negotiations between the employer and employee.

**B. The Contract Is Unambiguous.**

 When the language of a contract is clear and unambiguous, its interpretation and legal effect are questions of law. An unambiguous contract will be given its plain meaning. The purpose of interpreting a contract is to determine the intent of the contracting parties at the time the contract was entered. In determining the intent of the parties, this Court must view the contract as a whole. If a contract is found ambiguous, its interpretation is a question of fact. Whether a contract is ambiguous is a question of law. A contract is ambiguous if it is reasonably subject to conflicting interpretations.

*Lamprecht v. Jordan, LLC*, 139 Idaho 182, 185–86, 75 P.3d 743, 746–47 (2003) (internal citations omitted).

The paragraph governing Bakker's compensation states:

Your compensation will be $3500 per month paid semi-monthly at $1750 per period. You will also be paid .25% of 1% override on all successful closings of escrow on units at Thunder Spring. This begins as of your first day of employment estimated to be on or about December 30, 2001. This includes all transactions written inside or outside the sales venue, and will be in effect until all units at Thunder

Spring close escrow. This will not be applicable for units previously disclosed by the developer or those in a holdover period with McCann Daech Fenton. Further, this is in affect (sic) only during your term of employment with ... Thunder Spring.

The dispute concerns the last sentence of the paragraph. While certainly not a model of good drafting, we conclude the sentence is unambiguous in referring to the entire compensation package, both the monthly wage and the earning of commissions.

## C. The District Court Did Not Err In Denying Recovery For Quantum Meruit.

The doctrine of quantum meruit permits recovery, on the basis of an implied promise to pay, of the reasonable value of the services rendered or the materials provided. *Great Plains Equip., Inc. v. Northwest Pipeline Corp.*, 132 Idaho 754, 767, 979 P.2d 627, 640 (1999) (citing *Peavey v. Pellandini*, 97 Idaho 655, 551 P.2d 610 (1976)). Because quantum meruit is a species of implied contract, such recovery will not normally lie where there is an express contract governing the relationship of the parties. *Cf. Wolford v. Tankersley*, 107 Idaho 1062, 695 P.2d 1201 (1984) ("[O]nly when the express agreement is found to be enforceable is a court precluded from applying the equitable doctrine of unjust enrichment in contravention of the express contract."). However, equitable remedies may be available even where an express contract exists, if the contract is unlawful, unconscionable or violates public policy. *U.S. Bank Nat. Ass'n v. Kuenzli*, 134 Idaho 222, 227, 999 P.2d 877, 882 (2000). It has not been asserted that the term at issue is unlawful and we have already concluded the term does not violate public policy.

This Court recently addressed the doctrine of unconscionability in *Lovey v. Regence BlueShield of Idaho*, 139 Idaho 37, 72 P.3d 877 (2003):

Courts do not possess the roving power to rewrite contracts in order to make them more equitable. *Smith v. Idaho State Univ. Federal Credit Union*, 114 Idaho 680, 760 P.2d 19 (1988). Equity may intervene to change the terms of a contract if

the unconscionable conduct is serious enough to justify the court's interference. *Id.* "While a court of equity will not relieve a party from a bargain merely because of hardship, yet he [or she] may claim the interposition of the court if an unconscionable advantage has been taken of his [or her] necessity or weakness." 114 Idaho at 684, 760 P.2d at 23 (quoting 28 AM.JUR.2d Equity § 24 (1966) ). It is not sufficient, however, that the contractual provisions appear unwise or their enforcement may seem harsh. *Walker v. American Cyanamid Co.*, 130 Idaho 824, 948 P.2d 1123 (1997).

For a contract or contractual provision to be voided as unconscionable, it must be both procedurally and substantively unconscionable. *Id.* Procedural unconscionability relates to the bargaining process leading to the agreement while substantive unconscionability focuses upon the terms of the agreement itself. *Id.*

*Lovey*, 139 Idaho at 41–42, 72 P.3d at 881–82. Whether a contractual term is unconscionable is a question of law subject to free review. *Lovey*, 139 Idaho at 41, 72 P.3d at 881.

Thunder Spring asserts that Bakker never raised this argument below. A review of the record shows that Bakker did not raise this in her initial memorandum in support of her motion for summary judgment. However, Bakker moved for partial summary judgment on the ambiguity of the contract, not on quantum meruit. Bakker raised unconscionability in her memorandum opposing Thunder Spring's motion for summary judgment. Bakker has preserved the issue for appeal.

The district court ruled that an express contract existed; therefore quantum meruit was not available as a remedy for Bakker. Case law holds to the contrary. Thunder Spring argues that this Court may imply a ruling that the term is not unconscionable, based on the district court's rejection of the quantum meruit theory. We reject this argument. The district court's specific basis for rejecting the quantum meruit claim was the existence of an express contract, yet the district court did not address the exceptions. Bakker properly asserted an unconscionabili-

ty argument to the district court and the district court never ruled on the issue.

■■■ Because unconscionability is a question of law and this case is postured as a summary judgment motion, this Court may rule on the issue even where the district court did not. While the term *may* be procedurally unconscionable (unequal bargaining, poor wording), the contract term does not appear to be one that "no person in his or her senses and not under delusion would make on the one hand and that no honest and fair person would accept on the other." *Hershey*, 111 Idaho at 491, 725 P.2d at 196. Although the issue is not before us, we note that the compensation paragraph appears to offer the possibility of an override for sales contracted prior to the beginning of employment and closing after the start of employment, or for sales made by another member of the sales team. While the term works a harsh result on the facts of this case, all that was required of Bakker was to remain employed on the day of closing. If Thunder Spring had conspired to terminate the employment prematurely in order to avoid payment of the commission, then the covenant of good faith and fair dealing would be implicated; Bakker might still have a remedy. The fact is that Bakker had almost absolute control over the condition precedent to receiving the commission. Drawing all inferences in favor of Bakker and construing the facts in her favor, the term is not unconscionable.

## D. The District Court Did Not Err In Denying Relief For Breach Of The Covenant Of Good Faith And Fair Dealing.

■■■ Idaho has adopted a system of notice pleading. *Cook v. Skyline Corp.*, 135 Idaho 26, 33, 13 P.3d 857, 864 (2000) (citation omitted); I.R.C.P. 8(a)(1). Thus, a pleading "which sets forth a claim for relief . . . need only contain 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in addition to alleging jurisdiction of the court and a demand for judgment. . . ." *Id.* (citations omitted). Under notice pleading, "a party is no longer slavishly bound to stating particular theories in its pleadings." *Id.* (quoting *Dursteler v. Dursteler*, 108 Ida-

ho 230, 697 P.2d 1244 (Ct.App.1985), *later proceeding,* 112 Idaho 594, 733 P.2d 815 (Ct. App.1987)). Rather, a complaint need only state claims upon which relief may be granted. *Id.;* I.R.C.P. 8(a)(1). All pleadings shall be so construed as to do substantial justice. I.R.C.P. 8(f).

■■■ The implied covenant of good faith and fair dealing is a covenant implied by law in the parties' contract. *Idaho Power Co. v. Cogeneration, Inc.,* 134 Idaho 738, 750, 9 P.3d 1204, 1216 (2000). The covenant requires that the parties perform, in good faith, the obligations imposed by their agreement, and a violation of the covenant occurs only when either party violates, nullifies or significantly impairs any benefit of the contract. *See Idaho First Nat'l Bank v. Bliss Valley Foods, Inc.,* 121 Idaho 266, 289, 824 P.2d 841, 863 (1991). Any action by either party which violates, nullifies or significantly impairs any benefit of the employment contract is a violation of the implied-in-law covenant. *Metcalf v. Intermountain Gas Co.,* 116 Idaho 622, 627, 778 P.2d 744, 749 (1989). Further, the covenant is implied in contracts and breach results in contract damages, not tort damages. *Metcalf,* 116 Idaho at 626, 778 P.2d at 748.

Based on the foregoing analysis, the contract term at issue did not violate the public policy of Idaho and is not unconscionable. On this analysis, even if Bakker's complaint encompasses a claim for breach of the covenant of good faith and fair dealing, Bakker would not have any contractual damages, not having a legal claim to the commission.

## E. Thunder Spring Is Not Entitled To An Award Of Attorney Fees.

■■■ Thunder Spring argues it should be awarded attorney fees pursuant to I.C. § 45–612, allowing fees where an employee makes a false claim for wages and knows of the falsity of the claim. Such a determination is a question of fact. Thunder Spring did not seek attorney fees in the district court; therefore the question of Bakker's knowledge of the falsity of her claim has not been litigated. Because Thunder Spring did not raise the issue below, we conclude that remand for a fact-finding is not appropriate.

Because the question was not decided by the district court, this Court cannot conclude that Bakker knew her claim was false. We decline to award attorney fees under I.C. § 45–612.

 Thunder Spring also argues that fees should be awarded pursuant to I.C. § 12–120(3), allowing recovery of fees in an action based on a commercial transaction. In *Zattiero v. Homedale Sch. Dist. No. 370*, 137 Idaho 568, 51 P.3d 382 (2002), an employee sued a school district for wages, based on breach of contract and quantum meruit. The district court granted summary judgment to the school district. On appeal, the district court's judgment was affirmed. The school district sought an award of attorney fees based on I.C. § 12–120(3), but this Court declined to make such award, holding that I.C. § 45–612 was the employer's sole basis for an award. While this action did address breach of the covenant of good faith and fair dealing, which is not a "wage claim," we have concluded that breach of the covenant was not reached as an issue on appeal. We see no reason to distinguish this case from *Zattiero* and we decline to award attorney fees under I.C. § 12–120(3).

### IV.

### CONCLUSION

We affirm the district court's grant of summary judgment in favor of Thunder Spring. The contract is unambiguous, the contract term at issue does not violate the public policy of Idaho and is not unconscionable. We decline to award attorney fees to either party. Costs are awarded to Thunder Spring pursuant to I.A.R. 40.

Chief Justice SCHROEDER and Justices TROUT, EISMANN and BURDICK concur.