IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 41182

| | | |
|---|---|---|
| EAGLE SPRINGS HOMEOWNERS' ASSOCIATION, INC., | ) ) | 2014 Unpublished Opinion No. 570 |
| | ) | Filed: June 18, 2014 |
| Plaintiff-Respondent, | ) ) | |
| | ) | Stephen W. Kenyon, Clerk |
| v. | ) | |
| | ) | THIS IS AN UNPUBLISHED |
| NATHAN HERREN, | ) | OPINION AND SHALL NOT |
| | ) | BE CITED AS AUTHORITY |
| Defendant-Appellant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MARYANN HERREN, | ) | |
| | ) | |
| Defendant. | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Kathryn A. Sticklen, District Judge. Hon. Christopher M. Bieter, Magistrate.

Order of the district court affirming judgment of the magistrate court, affirmed.

Nathan Herren, Boise, pro se appellant.

Vial Fotheringham LLP; Sarah M. Anderson, Boise, for respondent.
_____

GRATTON, Judge

Nathan Herren and Maryann Herren (the Herrens) appeal from the district court's intermediate appellate decision that affirmed the magistrate court's judgment in favor of Eagle Springs Homeowners' Association, Inc. (Eagle Springs).

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Eagle Springs brought a small claims action against the Herrens to collect past due assessments. Eagle Springs prevailed and the Herrens appealed to the magistrate court. The magistrate conducted a new trial establishing the following: The Herrens own a home in the Eagle Springs subdivision. The subdivision residents, including the Herrens, are subject to

1

Covenants, Conditions, and Restrictions (CC&Rs). The CC&Rs provide for regular assessments of the homeowners to pay for the costs and expenses of the homeowners' association. The CC&Rs grant authority to the board of Eagle Springs to levy a special assessment if the regular assessment is inadequate. The Eagle Springs board raised the regular assessment, beginning in 2008, from $100 per quarter to $130 per quarter. Notice was sent to the residents. This increase was discussed at the annual homeowners' association meeting, which included the presence of a quorum of the membership. However, the members did not vote on the assessment increase. In 2010, the Herrens and the other residents were also charged a $50 special assessment, but there was no evidence the required ten-day notice was given to residents by Eagle Springs. The Herrens continued to make only $100 payments, but then paid no assessments in 2011. The CC&Rs state that Eagle Springs may charge a late fee and 18 percent interest on payments that are over twenty days late.

The magistrate court ordered judgment in favor of Eagle Springs as to the regular assessment payments, but concluded the special assessment failed to properly comply with the notice requirement in the CC&Rs. The Herrens appealed to the district court and the district court affirmed the magistrate court's judgment. The Herrens timely appeal.

## II.

## ANALYSIS

When reviewing the decision of a district court sitting in its appellate capacity, our standard of review is the same as expressed by the Idaho Supreme Court:

> The Supreme Court reviews the trial court (magistrate) record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure.

*Pelayo v. Pelayo*, 154 Idaho 855, 858-59, 303 P.3d 214, 217-18 (2013) (quoting *Bailey v. Bailey*, 153 Idaho 526, 529, 284 P.3d 970, 973 (2012)). Thus, the appellate courts do not review the decision of the magistrate court. *Bailey*, 153 Idaho at 529, 284 P.3d at 973. Rather, we are procedurally bound to affirm or reverse the decisions of the district court. *State v. Korn*, 148 Idaho 413, 415 n.1, 224 P.3d 480, 482 n.1 (2009).

The Herrens contend that the CC&Rs require a membership vote to increase the regular assessments.[1] When interpreting CC&Rs, we apply the rules of contract construction. *Pinehaven Planning Bd. v. Brooks*, 138 Idaho 826, 829, 70 P.3d 664, 667 (2003).

> When the language of a contract is clear and unambiguous, its interpretation and legal effect are questions of law. An unambiguous contract will be given its plain meaning. The purpose of interpreting a contract is to determine the intent of the contracting parties at the time the contract was entered. In determining the intent of the parties, this Court must view the contract as a whole. If a contract is found ambiguous, its interpretation is a question of fact. Whether a contract is ambiguous is a question of law. A contract is ambiguous if it is reasonably subject to conflicting interpretations.

*Bakker v. Thunder Spring-Wareham, LLC*, 141 Idaho 185, 190, 108 P.3d 332, 337 (2005).

To establish that the regular assessments require membership vote, the Herrens rely on Section 3.1[2] of the Eagle Springs bylaws that states:

> Section 3.1  Responsibilities.  The Corporation shall have the responsibility of administering the Common Area owned and/or managed by the Corporation, if any, approving the annual budget, establishing and collecting all assessments, if any, and may arrange for the management of the same pursuant to an agreement, containing provisions relating to the duties, obligations, removal and compensation of the Manager, as defined below. Except as otherwise provided, decisions and resolutions of the Corporation shall require an affirmative vote of a Majority of Members present at an annual or special meeting of the Corporation at which a quorum is present or written consent of a Majority of Members of the Corporation.

The Herrens also rely on Section 7.9 of the association's declaration:

---

[1] The Herrens raise numerous other contentions that were not presented below. Generally, issues not raised below may not be considered for the first time on appeal. *Sanchez v. Arave*, 120 Idaho 321, 322, 815 P.2d 1061, 1062 (1991). Therefore, we decline to consider the Herrens' other issues raised for the first time on appeal.

[2] The Herrens compare Section 3.1 with Idaho Code § 45-810(7)(d) and (e), which requires an unincorporated association to comply with the following to impose a lien on a given lot:
> (d) A method of adopting and amending fees; and
> (e) A provision providing that no fees or assessments of the homeowner's association may be increased unless a majority of all members of the homeowner's association vote in favor of such increase.

However, I.C. § 45-810(7) applies to homeowners' associations that are "unincorporated." Eagle Springs is an incorporated association.

7.9　Special Notice and Quorum Requirements:　Notwithstanding anything to the contrary contained in the Project Documents, written notice of any meeting called for the purpose of levying a Special Assessment, or for the purpose of obtaining a membership vote in connection with an increase in the Regular Assessment, shall be sent to all Members of the Association and to any person in possession of a Building Lot in the applicable Phase, not less than fifteen (15) days nor more than thirty (30) days before such meeting.　At the first such meeting called, the presence of Members or of proxies entitled to cast sixty percent (60%) of the total votes of the Association shall constitute a quorum.　If such quorum is not present, subsequent meetings may be called subject to the same notice requirement, and the required quorum at the subsequent meetings shall be fifty percent (50%) of the quorum required at the preceding meeting.　No such subsequent meeting shall be held more than thirty (30) days following the preceding meeting.

The district court agreed with the magistrate and quoted the magistrate's conclusion that Section 7.9 "merely describes the procedure for calling a meeting to . . . increase the Regular Assessment.　It does not require such a meeting."　Both the magistrate and the district court found it conclusive that nowhere in the CC&Rs does it require a member vote to increase the regular assessment.　Eagle Springs also contends that Section 7.9 simply means that the association may call a meeting for the purpose of increasing the assessments with a membership vote, but nothing in the declaration or bylaws requires a membership vote.　Eagle Springs argues the district court properly concluded that Section 7.3 controls and the amount for regular assessments is determined by the association's expense estimate.　Section 7.3 states that "[a]ll Owners are obligated to pay Regular Assessments to the treasurer of the Association on a schedule of payments established by the Board."[3]　Section 7.3.2 and 7.3.3 of the association's declaration states:

7.3.2　Computation of Regular Assessments.　The Association shall compute the amount of its Expenses on an annual basis.　The Board shall compute the amount of Regular Assessments owed beginning the first day of the third month following the month in which the closing of the first sale of a Building Lot occurs in the Property for the purposes of the Association's Regular Assessment ("Initiation Date").　Thereafter, the computation of Regular Assessments shall take place not less than thirty (30) nor more than sixty (60) days before the beginning of each fiscal year of the Association. The computation of the Regular Assessment for the period from the Initiation Date until the beginning of the next

_____

[3]　Similarly, as to special assessments, Section 7.4.1 provides that upon proper determination of need, the board shall "levy" a special assessment and "determine the schedule under which the Special Assessment will be paid."

4

fiscal year shall be reduced by an amount which fairly reflects the fact that such period was less than one year.

        7.3.3   <u>Amounts Paid by Owners</u>. The Board can require, in its discretion or as provided by the Project Documents; payment of Regular Assessments in monthly, quarterly, semi-annual or annual installments. The Regular Assessment to be paid by any particular Owner for any given fiscal year shall be computed by multiplying the Association's total advance estimate of Expenses by the fraction produced by dividing the Building Lots attributable to the Owner by the total number of Building Lots in the Property.

Eagle Springs notes that nowhere in the CC&Rs is an assessment amount set. Instead, the amount is computed based on the association's estimated expenses. The magistrate found that "[i]n computing the amount of the Regular Assessments, the Board of the Association, at its December 17, 2007 meeting, decided to raise the Regular Assessments from $100 per quarter to $130 per quarter." Upon review of the record, there is substantial evidence to support the finding that Eagle Springs properly calculated the regular assessment amount based on the expense estimate. However, we must determine if a vote is required in conjunction with the increased assessments from $100 per quarter to $130 per quarter.

As an initial matter, Section 3.1 of the bylaws states that the association shall have the responsibility of "establishing and collecting all assessments." The term of Section 3.1 providing for a vote any time "decisions and resolutions of the Corporation" are made expressly applies only "[e]xcept as otherwise provided." Moreover, nothing in the Eagle Springs CC&Rs or bylaws states that setting and levying the assessment amount is defined as a corporate decision or resolution. Additionally, Section 7.3.2 of the declaration sets out how the assessment amount is to be calculated, but it makes no mention of a membership vote. Thus, the Eagle Springs board, under the authority of the CC&Rs, is able to project the expenses, fix, and levy an assessment amount.[4] As noted, Sections 7.3 and 7.4.1 specifically provide for the board to fix and levy assessments and special assessments.

As stated by the magistrate and the district court, Section 7.9 provides only for written notice in the event any meeting may be held to allow a membership vote in connection with an increase in the regular assessment. Section 7.9 does not require a meeting for the fixing and

---

[4]    This is consistent with Section 5.6.1.1 placing "power to levy Assessments on any Owner or any portion of the Property and to force payment of such Assessments" with the association's board.

levying of assessments and, indeed, other provisions, as noted above, place that responsibility with the board. We, therefore, affirm the district court's intermediate appellate decision affirming the magistrate court's judgment in favor of Eagle Springs.

## III.

## CONCLUSION

The regular assessment was properly increased. Therefore, the district court's appellate decision affirming the judgment of the magistrate court is affirmed. Costs on appeal are awarded to Eagle Springs.

Judge LANSING and Judge MELANSON **CONCUR.**