## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 48228

NATHAN SMITH, an individual, )
                                           )
    Plaintiff-Appellant, )
                                           )
v. )     **Boise, August 2021 Term**
                                           )
KOUNT, INC., a Delaware corporation )     **Opinion Filed: October 20, 2021**
authorized to do business in the State of )
Idaho, )     **Melanie Gagnepain, Clerk**
                                           )
    Defendant-Respondent. )

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Steven Hippler, District Judge.

The decision of the district court is <u>affirmed</u>.

Rossman Law Group, PLLC, Boise, for Appellant. Matthew Gunn argued.

Holland & Hart, LLP, Boise, for Respondent. Dean A. Bennett argued.

_____

ZAHN, Justice.

This case arises from an employee's claim, filed pursuant to the Idaho Wage Claim Act, seeking to recover bonus compensation that his employer refused to pay following the employee's resignation. Nathan Smith ("Smith") appeals from a district court order granting summary judgment in favor of his former employer, Kount, Inc. ("Kount"), and denying his cross motion for summary judgment on the grounds that the compensation agreement unambiguously required Smith to remain employed until a specified date to earn the bonus compensation and Smith resigned before that date. For the reasons discussed below, we affirm the district court's decision.

### I.     FACTUAL AND PROCEDURAL BACKGROUND

Kount is a fraud prevention firm with headquarters in Boise, Idaho. In the spring of 2018, Smith began working at Kount as a business development representative. As part of his employment agreement, Smith entered into a written agreement with Kount governing the terms

1

of his compensation—the Incentive Compensation Plan ("ICP"). Under the ICP, Smith could earn two separate forms of compensation: a set annual base salary paid monthly, and additional "variable compensation" that was paid quarterly for meeting certain enumerated metrics. The ICP refers to "Variable Compensation," "Target Incentive," and "Commissions." For ease of reference, we will refer to the additional metric-based compensation as "variable compensation."[1]

Kount updated the ICP at the beginning of each calendar year. On January 2, 2019, Smith signed an updated ICP effective through December 31, 2019. Section 3 of the ICP, entitled "Compensation Components," provided a participant's compensation may include base salary, commission-based incentive pay, bonus-based incentive pay, other bonuses, and potentially other non-cash compensation. Exhibit A to the ICP is a "Plan Acknowledgement Form" ("PAF"), which set forth Smith's name, assignment, annual base salary, and variable compensation. The 2019 PAF set Smith's annual base salary at $35,500. The PAF also identified four metrics for determining the amount of variable compensation payable to Smith under the ICP: (1) call volume; (2) conversations; (3) overviews/demos; and (4) closed/won deals, and specified bonus amounts based on the number of completed events in each metrics category.[2]

With respect to variable compensation, Section 2 of the ICP provided that "[i]ncentives are earned based upon the attainment of performance measure quotas and goals as described herein below." Section 3 of the ICP provided, in relevant part:

> Each Participant's PAF specifies the base salary, annual Target Incentive (TI) opportunity, goals, and other related individual information for each participant. No amounts will be earned under the [ICP] until an applicable event or activity is complete, including all applicable forms as designated by Kount.

Section 6 of the ICP, entitled "General Payment Conditions," provided, in relevant part:

> In order to receive Commissions payments, you must complete all required documentation and reports, and be an employee in good standing at the time of payment. No incentives will be earned or paid for a contract signed after the Participant's termination of employment, for any reason. Unpaid Variable Compensation will be forfeited in the event a Participant separates from Kount before payment is made . . . Commissions will be paid forty-five (45) days after the end of each quarter.

---

[1] The parties do not contend that a meaningful difference exists between the terms "Variable Compensation," "Target Incentive," and "Commissions" as used in the ICP.

[2] For example, the PAF identified three tiers for the call volume metric. Each tier identified a specific bonus to be paid for a specified number of "outbound dials." The more "outbound dials" completed, the greater the bonus.

In 2019, the end of the third quarter ("Q3") fell on September 30, 2019. Pursuant to the ICP, Q3 variable compensation was scheduled to be paid on November 15, 2019. Before the end of Q3, on September 17, Smith submitted a two-week notice of his resignation from employment with Kount; his last day coinciding with the end of the quarter. At the time Smith submitted his two-week notice, he claims he would have been eligible for $6,600 in variable compensation for Q3 based upon the PAF's metrics.

On September 17, Smith met with his supervisor, Scott Przybyla, to discuss his resignation. Smith disclosed he was leaving for another job. Przybyla explained that Smith would not receive his Q3 variable compensation unless he remained employed with Kount on the scheduled payment date—November 15, 2019. Smith asked Przybyla to make an exception. On September 23, 2019, Przybyla denied the request. Smith's last day at Kount was September 23, 2019. Kount paid Smith his base salary through his last day of employment but did not pay Smith any variable compensation for Q3.

On December 16, 2019, Smith filed a complaint against Kount alleging a violation of the Idaho Wage Claim Act based on Kount's failure to pay Smith the $6,600 in variable compensation.[3] Shortly thereafter, both parties filed motions for summary judgment. Following a hearing, the district court issued a memorandum decision and order granting Kount's motion for summary judgment and denying Smith's cross-motion for summary judgment because the ICP unambiguously required Smith's continued employment as a condition precedent to earning the Q3 variable compensation, Smith failed to satisfy that condition, and as a result was not entitled to the compensation. The district court subsequently entered a judgment dismissing Smith's claim. Smith timely appealed.

## II. ISSUE ON APPEAL

Did the district court err in concluding that Kount was not required to pay Smith any variable compensation because he failed to remain an employee in good standing on the designated payment date?

---

[3] We note that paragraphs 3(b), 4, 5, and 7(b) of the ICP described commissions-based compensation based on the revenue that Kount recognized from client contracts. The PAF, however, does not indicate Smith was entitled to this revenue-based commission compensation. It is unclear why these apparently inapplicable provisions are in Smith's ICP. At any rate, Smith did not raise any claim to this revenue-based compensation in his complaint. Instead, Smith's complaint and his arguments on appeal concern only the variable compensation based on the metrics set forth in the PAF.

### III. STANDARD OF REVIEW

When reviewing a district court's ruling on a motion for summary judgment, this Court applies the same standard used by the district court in ruling on the motion. *Turner v. City of Lapwai*, 157 Idaho 659, 661, 339 P.3d 544, 546 (2014). That is, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). Furthermore, all disputed facts are "construed liberally in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party." *Bedke v. Ellsworth*, 168 Idaho 83, __, 480 P.3d 121, 129 (2021) (quoting *Venable v. Internet Auto Rent & Sales, Inc.*, 156 Idaho 574, 578, 329 P.3d 356, 360 (2014)).

"The fact that the parties have filed cross-motions for summary judgment does not change the applicable standard of review, and this Court must evaluate each party's motion on its own merits." *Id.* at ___, 480 P.3d at 128 (quoting *Potlatch Educ. Ass'n v. Potlatch Sch. Dist. No. 285*, 148 Idaho 630, 633, 226 P.3d 1277, 1280 (2010)).

> Where the parties have filed cross-motions for summary judgment relying on the same facts, issues and theories, the parties effectively stipulate that there is no genuine issue of material fact that would preclude the district court from entering summary judgment. However, the mere fact that both parties move for summary judgment does not in and of itself establish that there is no genuine issue of material fact.

*Id.* (quoting *Intermountain Forest Mgmt., Inc. v. La. Pac. Corp.*, 136 Idaho 233, 235, 31 P.3d 921, 923 (2001)) (internal citations omitted). Issues of statutory interpretation are questions of law which are reviewed by this Court de novo. *Hayes v. City of Plummer*, 159 Idaho 168, 170, 357 P.3d 1276, 1278 (2015) (citing *State v. Schulz*, 151 Idaho 863, 865, 264 P.3d 970, 972 (2011)).

### IV. ANALYSIS

Idaho's Wage Claim Act governs an employee's claim to wages against a former employer. *Bakker v. Thunder Spring-Wareham, LLC*, 141 Idaho 185, 189, 108 P.3d 332, 336 (2005) (citing I.C. § 45-601 *et seq.*)). The parties do not dispute that the variable compensation in question constituted "wages" for purposes of the Wage Claim Act. With respect to the payment of wages for currently employed individuals, the Wage Claim Act requires only that employers pay their employees the minimum wage for all hours worked and pay employees on a scheduled payday at least once a month. *Savage v. Scandit, Inc.*, 163 Idaho 637, 641, 417 P.3d 234, 238

(2018) (citations omitted); *see also* I.C. § 45-608(1). Beyond that, the parties to an employment contract are free to negotiate the terms of an employee's compensation. *See Bakker*, 141 Idaho at 190, 108 P.3d at 337 ("As long as the employer is meeting the minimum wage requirements of state law, further compensation is subject to negotiations between the employer and employee."); *Savage*, 163 Idaho at 640–41, 417 P.3d at 238–39 (citing *Bakker*, 141 Idaho at 190, 108 P.3d at 337) ("While employers are required to pay wages [at least] monthly, the employer and employee have a great deal of freedom to determine how that compensation will be paid.").

When an employee separates from his employer, the Wage Claim Act requires the employer to pay "all wages then due the employee" on the next scheduled payday or within ten days, whichever is sooner. I.C. § 45-606(1). In determining whether wages are "due" to an employee and thus required to be paid under Idaho Code section 45-606(1), "this Court often looks to whether the employee is entitled to the wages for services rendered or whether there is more they must do in order to be entitled to the wages." *Savage*, 163 Idaho at 641, 417 P.3d at 238 (citations omitted). "If the employee was entitled to the commission at the time he brought the suit it would fall under the IWCA [Idaho Wage Claim Act], if there was more that he was required to do then it would not." *Id.*

Smith concedes that Kount paid him at least the minimum wage required on at least a monthly basis, and that within 10 days of his separation Kount paid him at least the minimum wage for all hours worked. Smith's claim in this case solely concerns the unpaid Q3 variable compensation. As such, the question is whether the variable compensation was "due" to Smith at the time he separated from employment. *See* I.C. § 45-606(1). Because employees and employers are free to contract as to the terms of an employee's compensation beyond the minimum wage requirement, whether any variable compensation was due to Smith at the time of his separation depends upon the terms of his contract with Kount. *See Bakker*, 141 Idaho at 190, 108 P.3d at 337.

The primary objective in interpreting a contract "is to discover the mutual intent of the parties at the time the contract is made." *Credit Suisse AG v. Teufel Nursery, Inc.*, 156 Idaho 189, 196, 321 P.3d 739, 746 (2014) (quoting *Straub v. Smith*, 145 Idaho 65, 69, 175 P.3d 754, 758 (2007)). The best indication of the parties' intent is derived from the language of their agreement. *Id.* This Court views the contract as a whole in determining the parties' intent. *Lamprecht v. Jordan, LLC*, 139 Idaho 182, 185, 75 P.3d 743, 746 (2003) (citing *Daugharty v.*

5

*Post Falls Highway Dist.*, 134 Idaho 731, 735, 9 P.3d 534, 538 (2000)). Where its language is unambiguous, a contract will be given its plain meaning. *Credit Suisse AG*, 156 Idaho at 196, 321 P.3d at 746 (citing *Bakker*, 141 Idaho at 190, 108 P.3d at 337). However, where a contract is ambiguous, its interpretation becomes a question of fact. *Lamprecht*, 139 Idaho at 185, 75 P.3d at 746 (citing *Daugharty*, 134 Idaho at 735, 9 P.3d at 538). A contract is ambiguous where its language is "reasonably subject to conflicting interpretations." *Id.* at 185–86, 75 P.3d at 746–47 (citing *Lewis v. CEDU Educ. Serv., Inc.*, 135 Idaho 139, 144, 15 P.3d 1147, 1152 (2000)).

Smith argues that the most significant issue in this case is the distinction between when wages are "earned," when they are "due," and when they are "paid." Smith contends that the district court correctly recognized that an earned, but unpaid, commission is due to an employee upon separation of employment, citing *Goff v. H.J.H. Co.*, 95 Idaho 837, 840, 521 P.2d 661, 664 (1974). The distinction between when wages are "earned," "due," and "paid" is critical to Smith's interpretation of the ICP because Sections 2 and 3 use the term "earned," whereas Section 6 uses the terms "general payment conditions," "receive," and "forfeit." Smith argues this difference in language demonstrates that the intent of Sections 2 and 3 was to govern the way Smith could earn variable compensation, whereas the intent of Section 6 was simply to identify the date that compensation would be "paid." Smith claims that, under *Goff*, the variable compensation was "due" to him the moment he "earned" it by completing the activities identified in Sections 2 and 3.

Under this interpretation, Smith argues that he earned $6,600 in variable compensation when, pursuant to Section 2 of the ICP, he attained the goals identified in the PAF and when, pursuant to Section 3, he completed each applicable activity and completed all applicable forms designated by Kount. Because those sections have no requirement that Smith remain an employee in good standing until a specified date, he contends that his continued employment was not a condition precedent to "earning" the variable compensation. Smith asserts that, pursuant to *Goff*, because he had already earned the variable compensation when he separated from employment, Idaho Code section 45-606 simply accelerated the payment date identified in Section 6 of the ICP. Smith argues the district court erred in granting summary judgment in favor of Kount because Section 6 only identified the timing of the payment, not the conditions for "earning" it.

Kount argues that the district court did not err when it interpreted the ICP as unambiguously requiring Smith to remain an employee in good standing as a condition precedent to earning variable compensation under the plan. Specifically, Kount contends that the district court correctly read Sections 2, 3, and 6 of the ICP in determining whether Q3 variable compensation was due to Smith, and that Smith's interpretation ignores this Court's precedent on contract interpretation by reviewing Sections 2 and 3 in isolation, while ignoring the plain language of Section 6.

When reviewing the district court's decision here we decline to depart from the plain language of the Wage Claim Act and our prior precedent. While Smith and Kount focus their arguments on whether Smith had "earned" the variable compensation under the ICP, the term "earned" does not appear within the governing provision of the Wage Claim Act. *See* I.C. § 45-606(1). Rather, the Wage Claim Act requires that upon termination of employment, "the employer shall pay or make available at the usual place of payment all wages <u>then due the employee</u> by the earlier of the next regularly scheduled payday or within ten (10) days[.]" (emphasis added). Thus, the proper focus under the Wage Claim Act is whether wages were "due," not whether they were earned. *See id.*

This Court's decision in *Goff* does not hold otherwise. The issue confronted in *Goff* was whether the Wage Claim Act required treble damages be awarded to any successful plaintiff in a suit for wages wrongfully withheld, even if the person who withheld the wages did not act with malice, wantonness, fraud, or oppression. *Goff*, 95 Idaho at 838, 521 P.2d at 662. The employee in *Goff*, a salesman at a farm implement dealership, was paid a monthly salary and a year-end bonus based on his sales. *Id.* The employer paid the employee a bonus of $2,400 for 1969 and a bonus of $2,000 for 1970. *Id.* The employee claimed the employer improperly calculated the bonus and he should have received more money for both years. *Id.* A jury returned a verdict for the employee for $965. *Id.* This Court determined that the Wage Claim Act mandated the trebling of the damage award. *Id.* at 840, 521 P.2d at 664.

Contrary to Smith's contentions, nothing in this Court's decision in *Goff* suggests that once a commission is "earned" it becomes "due" for purposes of the Wage Claim Act. In fact, there was no dispute in *Goff* that a commission was due to the employee. The only questions were whether the employee's bonus was correctly calculated and whether the employee was entitled to treble damages after the jury awarded him additional wages. As this Court later

7

recognized, "[n]othing in *Goff* is easily read as dictating public policy regarding how employers and employees may negotiate the terms of compensation for employment." *Bakker*, 141 Idaho at 190, 108 P.3d at 337.

In this case, when determining whether wages were "due" Smith for purposes of the Wage Claim Act, the proper inquiry is whether there was more that Smith needed to do to be entitled to wages under the contract. *Savage*, 163 Idaho at 641, 417 P.3d at 238. Turning to the plain language of the ICP, the plan unambiguously required Smith to remain an employee in good standing until forty-five days after the end of the quarter to qualify for payment of variable compensation. When Sections 2, 3, and 6 are read together, three conditions emerge that must be satisfied before variable compensation is due to an employee under the ICP. First, Section 2 requires that the employee qualify for variable compensation by meeting specific, individualized metrics identified in the PAF. Second, Section 3 clarifies that the events or activities upon which the metrics are based must be completed along with any applicable forms. Finally, Section 6 of the ICP expressly states that to receive payment of variable compensation, an individual must "be an employee in good standing *at the time of payment*." (Emphasis added). In other words, Section 6 of the ICP adds a third condition that an employee remain employed in good standing until forty-five days after the end of the quarter to be paid for having met the applicable metrics. When read as a whole, the ICP indicates that all three conditions must be met before the variable compensation is due to Smith.

Although Smith argues at length that he had "fully earned" the variable compensation by satisfying only the conditions laid out in Sections 2 and 3, the line drawn by Smith between conditions for earning variable compensation and conditions for receiving payment of variable compensation is an overly technical distinction. It fails to give effect to Sections 2, 3, and 6, as a whole. Regardless of the precise phrasing used to set the conditions for payment, Smith needed to satisfy another condition before the variable compensation was due to him; namely, he needed to remain an employee in good standing on the date payment was to be made.

This Court addressed a similar contract provision under the Wage Claim Act in *Bakker v. Thunder Spring-Wareham, LLC*, 141 Idaho 185, 108 P.3d 332 (2005). In that case, a real estate agent filed a wage claim against her former employer for commissions she alleged were due for the sale of a living unit in a Sun Valley development. *Id.* at 188, 108 P.3d at 335. The agent had procured a buyer who entered into a purchase and sale agreement for the unit but separated from

8

her employment with Thunder Spring before the transaction closed. *Id.* The employment contract term at issue in that case provided:

> Your compensation will be $3500 per month paid semi-monthly at $1750 per period. *You will also be paid .25% of 1% override on all successful closings of escrow on units at Thunder Spring.* This begins as of your first day of employment estimated to be on or about December 30, 2001. This includes all transactions written inside or outside the sales venue, and will be in effect until all units at Thunder Spring close escrow. This will not be applicable for units previously disclosed by the developer or those in a holdover period with McCann Daech Fenton. Further, *this is in affect* [sic] *only during your term of employment* with . . . Thunder Spring.

*Id.* (emphasis in original). Thunder Spring refused to pay any commission for the unit because the contract made the agent's continued employment through closing a condition precedent to receiving her commission. *Id.* In upholding the district court's grant of summary judgment in favor of Thunder Spring, this Court reasoned that the provision, though "certainly not a model of good drafting," unambiguously required the real estate agent to be employed at the time of closing to receive a commission for the sale. *Id.* at 189–91, 108 P.3d at 336–38. In doing so, this Court determined that so long as minimum wage requirements are being met and employees are paid at least monthly, a contract provision requiring continued employment as a condition precedent to receiving commissions was not against public policy in Idaho. *Id.* at 189–90, 108 P.3d at 336–37.

Smith's case is similar to *Bakker*. As in *Bakker*, the parties contracted for Smith's compensation beyond minimum wage. In such a case, *Bakker* instructs that the terms of the contract govern. Also as in *Bakker*, Section 6 of the ICP required continued employment as a condition precedent to the receipt of variable compensation. Stated differently, there was more Smith needed to do before he would be entitled to the variable compensation—he needed to be an employee in good standing with Kount on the payment date. *See Savage*, 163 Idaho at 641, 417 P.3d at 238. When Smith resigned before the payment date, he failed to satisfy all the required conditions for payment. As a result, the variable compensation was not "due" Smith at the time of his resignation.

At oral argument and in his briefing, Smith referenced a hypothetical to illustrate what he alleges would be an unfair result if we construe the ICP as requiring continued employment. Smith's hypothetical concerns a laborer employed by a landscaping company at the hourly rate of $20 per hour, who is paid on the last day of each month. According to Smith, if the laborer

9

resigns on the 15th of the month his wages do not evaporate, but rather Idaho Code section 45-606(1) accelerates the payment date. Smith contends the same result should apply here. Smith's hypothetical, however, is inapplicable to the facts of this case because it concerns the base wage paid to the laborer for hours worked prior to his separation, not compensation paid in addition to the base wage. Smith concedes that Kount paid him the base salary due to him at the date of his separation. Since Smith's claim concerns compensation over and above his base salary, whether any variable compensation was due to Smith depends upon the terms of his contract with Kount. *See Bakker*, 141 Idaho at 190, 108 P.3d at 337. Our decision today simply enforces the terms of the parties' contract.

In sum, the plain language of the Wage Claim Act dictates that the proper inquiry for purposes of Idaho Code section 45-606(1) is whether wages were "due" to Smith at the time of his separation, not whether Smith had "earned" the wages prior to his separation. Because Kount paid Smith at least minimum wage and paid him at least monthly, the Wage Claim Act did not limit Kount's and Smith's ability to contract for additional compensation and the terms of its payment. The terms of the parties' contract unambiguously required that Smith, to receive the variable compensation, remain a Kount employee in good standing on the payment date for the variable compensation. When Smith resigned before the payment date, he failed to satisfy this condition and therefore the variable compensation was not due to Smith at the time of his separation from employment.

## V.   CONCLUSION

Based on the foregoing, we affirm the district court's decision granting summary judgment in favor of Kount and denying Smith's cross motion for summary judgment.

Chief Justice BEVAN and Justices BRODY, STEGNER, and MOELLER **CONCUR.**

10